KAESTNER, Appellant, vs. MILWAUKEE AUTOMOBILE INSURANCE COMPANY, LIMITED, MUTUAL, and another, Respondents.

*November 15—December 15, 1948.*

13

For the appellant there was a brief by *Cyril C. Foster,* attorney, and *Ralph J. Drought* of counsel, both of Milwaukee, and oral argument by *Mr. Drought.*

For the respondents there was a brief by *Anderson & Murphy,* attorneys, and *J. Stewart Murphy* of counsel, all of Milwaukee, and oral argument by *J. Stewart Murphy.*

FAIRCHILD, J.    Plaintiff asks for a new trial.    He urges, among other reasons, error in permitting the jury to consider the question of whether the defendant acted in an emergency when he turned across the center line and entered plaintiff's traffic lane while passing the hitchhikers.    As it is considered that there was prejudicial error in so submitting the case to the jury we will confine our discussion to that point.

The instruction reads :

". . . you are also instructed that dark objects against a dark background are hard to distinguish, while they show up plainly against a light background.    It is recognized that there may be difficulty in discerning objects on a roadway of dark color in the nighttime, even with the most efficient headlights. The color of the object may so blend with the color of the road that a driver exercising ordinary care as to lookout may not discover it until too close to it to avoid collision with it.    It is for the jury to determine, from all the facts and circumstances in the case, whether any object or objects in the pathway of the defendant Orville Yanke did so blend, or sufficiently blend, as to prevent a proper lookout from timely disclosing its presence.    It is for the jury to determine in this situation as to whether or not the defendant Orville Yanke was negligent as to lookout in not perceiving the presence of the boys in the pathway before him sooner than he did.

"If the jury is satisfied by a preponderance of the credible evidence, to a reasonable certainty, that in the exercise of ordi-

nary care with reference to lookout the defendant Yanke was unable to discern the presence of the boys on the highway because of the blending of the color of their clothes with the background until such time as he was close to them, then he may be excused for not having observed them sooner; and the jury shall determine whether or not the defendant Orville Yanke was then confronted with an unforeseen emergency not attributable to any negligence on his part. In this connection, you are instructed that if some unforeseen emergency occurs which is not brought about by a failure on the part of a driver to exercise ordinary care, which unforeseen emergency would overpower the judgment of an ordinary careful driver so that momentarily he is not capable of intelligent action, he may not be negligent, or guilty of a failure to exercise ordinary care, and the law does not require him, when confronted with such an emergency, to take the best means of avoiding collision or injury."

Upon the record before us it appears that no emergency such as would excuse defendant's act existed. The defendant's conduct was the result of his deliberation. He cannot deliberately proceed to a point of danger and then act within the protection that a sudden emergency might otherwise give him. He saw the boys and the oncoming car. He chose to continue taking a course which at one point placed him in plaintiff's lane of traffic.

Defendant was on a road with which he was familiar. He knew that on entering the village of Okauchee he had to negotiate a curve. Defendant testified: "I know that that was a blind curve as I turn into Okauchee and that I couldn't see anything." He did reduce his speed. He said that he probably could have stopped within twenty feet at the speed he was going. He testified that immediately after making the turn his lights fell upon two boys standing at the right edge of the pavement. The boys were wearing dark clothes. They were about fifty feet beyond the bend when he first saw them. They were facing east trying to thumb a ride. Defendant testified that the boys stood there; that he did not turn out until he was

within two or three feet from them "because I figured they were going to move or something. . . . When I saw the car [plaintiff's] coming from the opposite direction it did not appear to be in my lane of traffic." He considered it was five hundred feet away and he could invade the south lane a couple of feet and get back to his side of the road before the cars would meet.

There was no occasion to warrant giving the jury to understand that his conduct might excuse him from all responsibility for the collision. There were no unforeseen conditions which required a submission to the jury of that principle of negligence law known as the emergency doctrine. To have the benefit of that rule one must suddenly find himself in a place of danger and be required to act without time to consider the best means that may be adopted to avoid the impending danger. The evidence does not support a finding that there existed such an an unforeseen emergency. One who has time to consider and decides to proceed in the face of a known situation does not suddenly find himself in a place of danger.

If defendant erred in his estimate of the distance the plaintiff was from him, the inquiry then turns to the negligence of plaintiff. If defendant was negligent in crossing the center line and the plaintiff's hearse was too close to be avoided, yet was under proper control and was traveling at a speed consistent with the condition of the road and the weather, the defendant certainly could not be held free from negligence. The emergency rule would come in for consideration to determine plaintiff's rights in the matter. There will have to be a finding based on the influence that defendant's sudden turn had upon the conduct of plaintiff in controlling and managing his machine.

The confusion in which the real issues were obscured to plaintiff's prejudice appear by reference to the arguments of the parties. The plaintiff claims that defendant was over on the wrong side of the road when the collision occurred and in

his brief argues that the "vital point in this case was the position of the cars at the time of impact." The defendant's reply to that is : "It would be less erroneous to designate it as *a* vital point, . . . that if [defendant] was on the wrong side at the time of impact, the [plaintiff] also was, and that whereas the [defendant's] position was excusable, there was no excuse for [plaintiff's] position."

If the collision happened where defendant insists it did the passing of the boys would be an immaterial incident unless in turning into the south lane he caused a situation to arise which affected if not excused plaintiff's conduct.

By giving the instruction the plaintiff was placed at a decided disadvantage. It tended to influence or balance in favor of defendant a seriously disputed issue. The defendant was not entitled to be considered as in an emergency and free from all negligence.

*By the Court.*—Judgment reversed with directions to grant a new trial.

KAESTNER, Executor, Appellant, vs. MILWAUKEE AUTOMOBILE INSURANCE COMPANY, LIMITED, MUTUAL, and another, Respondents.

*November 15—December 15, 1948.*

For the appellant there was a brief by *Cyril C. Foster,* attorney, and *Ralph J. Drought* of counsel, both of Milwaukee, and oral argument by *Mr. Drought.*

For the respondents there was a brief by *Anderson & Murphy,* attorneys, and *J. Stewart Murphy* of counsel, all of Milwaukee, and oral argument by *J. Stewart Murphy.*