WANSERSKI, by Guardian, and another, Respondents, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

*March 5—March 31, 1964.*

For the appellant there was a brief and oral argument by *James H. Van Wagenen* of Stevens Point.

For the respondents there was a brief by *Herman J. Glinski*, attorney, and *Atwell & Atwell* of counsel, all of Stevens Point, and oral argument by *Mr. Glinski*.

BEILFUSS, J. After the return of the verdict the court reduced the damages to the policy limits of the defendant insurance company.

The defendant contends (1) that its insured, Rogowski, was not causally negligent, (2) that the negligence of the plaintiff was at least equal to that of Rogowski, (3) that it was error to instruct the jury on the emergency doctrine, and (4) that a new trial should be granted in the interest of justice.

The findings of fact by the jury based upon credible evidence properly before them and upon adequate instructions as to the law, as reviewed by this court are limited by the

rule set forth in *Dickman v. Schaeffer* (1960), 10 Wis. (2d) 610, 616, 103 N. W. (2d) 922, as follows:

"When several inferences may reasonably be drawn from credible evidence, one of which will support a claim of one of the parties and the other inferences will not, it is for the jury to determine the proper inference to be drawn from the conflicting evidence. Although we could sustain a contrary result if found by the jury, it is our duty not to set aside a verdict when it is approved by the trial court, as here, and when there is credible evidence to sustain it. *Maccaux v. Princl* (1958), 3 Wis. (2d) 44, 87 N. W. (2d) 772; *Kanzenbach v. S. C. Johnson & Son, Inc.* (1956), 273 Wis. 621, 79 N. W. (2d) 249."

The trial court submitted the case to the jury upon an ultimate-fact verdict. As to the negligence, if any, of both drivers, approved instructions were given as to the definition of negligence, management and control, speed, dimming of headlights, and position on the highway. The court further instructed the jury, without distinction as to drivers, of the right to assume nonnegligent use of the highways and the standard emergency and cause instructions.

The defendant, in support of its position that there is no credible evidence to sustain a finding of causal negligence on the part of Rogowski, contends that the speed of Rogowski could not be causal. The plaintiff, the only surviving witness to the events before the collision, testified that the speed of Rogowski was 70 to 75 miles per hour. The violence of the collision is further evidence of speed.

Prior cases clearly set the rules as to the causal effect of speed.

We have recently held in *Baker v. Herman Mut. Ins. Co.* (1962), 17 Wis. (2d) 597, 602, 117 N. W. (2d) 725:

"This court has never held that excessive or unlawful speed is causal merely because it places the vehicle at a particular place at a particular time. Excessive speed is causal, how-

ever, when it prevents or retards the operator, after seeing danger, from slowing down, stopping, or otherwise controlling the vehicle so as to avoid a collision." [1]

If Rogowski had not deviated from his own lane of traffic at a material time before the accident, his speed, even if excessive or unlawful, would not have been causal. However, looking at the evidence in its most-favorable light in support of the verdict, we must conclude that there was negligence and that it was causal. The plaintiff testified that at all times when Rogowski was in sight (a distance of about one-half mile) that he was at least two or three feet over the center line in plaintiff's lane. That when the vehicles were one eighth of a mile apart he not only continued over the center line but deviated even more into the plaintiff's lane and continued until just before the collision, when he made a sharp turn back toward his own lane but was still in plaintiff's lane at the time of impact. If the jury accepted the plaintiff's testimony as the accurate description of the accident, Rogowski's speed was clearly causal.

The defendant further contends that the failure of Rogowski to dim his headlights as required by the rules of the road could not be causal in view of the plaintiff's testimony that he at all times saw Rogowski's car and its relative position on the highway and plaintiff's failure to claim he was "blinded" by Rogowski's headlights. Under this state of the evidence, failure to dim headlights could not be causal. However, the causation question, as well as the negligence question, was submitted to the jury in the ultimate-fact form of verdict under proper cause instructions. We cannot assume that the jury disregarded this instruction nor that they improperly applied it so as to conclude that the failure to dim headlights was a cause of the accident. While it can be con-

[1] See also *Korleski v. Lane* (1960), 10 Wis. (2d) 163, 102 N. W. (2d) 234.

sidered error to instruct a jury as to negligence in regard to headlights when the evidence will not sustain a finding of cause in connection with an ultimate-fact form of verdict, we do not consider it in this case, to be prejudicial error in view of other more dominant aspects of causal negligence present.

The principal cause of the collision was the position of the vehicles upon the highway just before and at the time of the collision, coupled with the management and control exercised by both drivers.

Under the plaintiff's version of the accident, as more fully set forth above, he was at all times in his lane of travel, was aware of Rogowski's position in his lane, concluded a few seconds before the impact that Rogowski was not going to return to his own lane of traffic, and then tried to avoid the imminent collision by turning to the left but even in turning to the left did not invade Rogowski's lane before the crash.

Rogowski was not able to testify because he did not survive. Nor were there any other eyewitnesses.

The defendant called an expert witness who testified that from his examination of the physical facts and from the hypothetical question put to him that in his opinion the impact was in Rogowski's lane of travel. It does not follow, of course, that the physical facts do establish the point of impact. Professor Easton testified that the point of impact can be identified by what he terms "multi-directional marks" on the surface of the road. He testified that these multidirectional marks were present in the photographs of the southbound lane which he examined. The nighttime photographs furnish no basis for comparison between the corresponding portions of the north and southbound lanes. In photographs taken the next day some marks are visible in the southbound lane; none appear in the northbound lane. However, the roadway had been cleaned up and the marks in the southbound lane are not at all prominent. In explaining the signif-

icance of these multidirectional marks on cross-examination, Professor Easton testified as follows:

"*Q.* Can you account for the circular mark to the north of the gouge mark appearing in the west lane? *A.* Not specifically, just generally, that when two vehicles come together, the fronts go down, and then depending on the relative speeds of the two vehicles and what happens as deformation takes place, you would get this circular motion; that is, the two vehicles are turning relative to each other and relative to the pavement."

He further admitted on cross-examination that the speed of deceased's automobile might have been greater than he had calculated from the facts which had been presented to him.[2]

It was never established how fast Professor Easton's calculations showed the cars to be traveling. Plaintiff's testimony was that he was going 20 miles per hour and deceased

---

[2] "*Q.* Do you know at what speed Norman Rogowski was traveling? *A.* The only thing I have on speed is calculations that I have made.

"*Q.* Now, were you told that just a few feet north of where the Rogowski car came to rest there was a large gouge in the bank of the ditch? *A.* No, I don't recall that.

"  . . .

"*Q.* This is a gouge in the west bank of the ditch, four feet north of the front of the Rogowski car where it came to rest, did you know that? *A.* No, I didn't know that.

"*Q.* Would that fact affect your calculations as to the speed of the Rogowski car?

"  . . .

"Witness Easton: I would have to know more about it in order to be able to make a calculation. Let's put it this way: it would probably raise the speed.

"*Q.* How much? *A.* Well, not knowing the size of it, I shouldn't answer that question.

"*Q.* You couldn't say? *A.* No.

"*Q.* It would be faster than what you originally thought when you answered counsel's question? [Concerning Professor Easton's opinion as to where the impact took place.] *A.* Yes."

was going 75 miles per hour. On the state of the record the jury might well have believed that such a large differential in speeds would have resulted in multidirectional marks somewhat removed from the point of impact.

The rule for evaluation of conclusions drawn from physical facts in conflict with sworn testimony of witnesses has been set forth in the following cases:

In *Hennepin Transportation Co. v. Schirmers* (1957), 2 Wis. (2d) 165, 85 N. W. (2d) 757, the court approved *Kleckner v. Great American Indemnity Co.* (1950), 257 Wis. 574, 44 N. W. (2d) 560, and quoted therefrom as follows, at page 171:

" 'The probative value of the testimony of witnesses is not destroyed by physical facts unless the physical facts are irrefutably established and permit of only one deduction.

" 'So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other.' "

And further, at page 172:

"This rule has been affirmed in *Koniecko v. Huffman,* 265 Wis. 79, 60 N. W. (2d) 729, 61 N. W. (2d) 880, and in *Blom v. Kumbier,* 275 Wis. 227, 81 N. W. (2d) 528. The physical facts are not so clear that but one inference can be drawn therefrom."

Similarly, in *New Amsterdam Casualty Co. v. Farmers Mut. Automobile Ins. Co.* (1959), 5 Wis. (2d) 646, 94 N. W. (2d) 175, the court says, at page 650:

"The complete rule was stated in the case of *Duss v. Friess,* 225 Wis. 406, 413, 273 N. W. 547, as follows:

" 'While testimony which is contrary to the unquestionable physical facts properly may be rejected because of its utter improbability or impossibility, *Samulski v. Menasha Paper Co.* 147 Wis. 285, 133 N. W. 142; *Holburn v. Coombs,* 209

Wis. 556, 245 N. W. 673, and other cases cited therein, such physical facts must be of such a nature as will permit of but one reasonable inference and that contrary to the testimony rejected. If the physical facts are such that different inferences may reasonably be drawn therefrom, they are then clearly not the kind of physical facts which may be considered controlling.' See also *Hennepin Transportation Co. v. Schirmers*, 2 Wis. (2d) 165, 85 N. W. (2d) 757."

In addition to these rules of evaluation the jury in this case could conclude that evidentiary facts upon which Professor Easton based his conclusions were both inaccurate and inadequate.

The question of testimony versus physical facts was an issue for the jury's determination.

Defendant claims that it was error for the trial court to give an instruction on the emergency doctrine. It cites *Schumacher v. Klabunde* (1963), 19 Wis. 83, 119 N. W. (2d) 457, for the proposition that as a matter of law no emergency is created in a head-on collision situation where the time span is such that the confronted driver has time for considered action. The case held that a three-second time span created an emergency as a matter of law. Here the question was at what point plaintiff ought to have recognized the situation. He testified that until the cars were about an eighth of a mile apart Rogowski would return to his own lane of travel. If this were a reasonable reaction under the circumstances, plaintiff would have had less than five seconds in which to react. If a three-second time span creates an emergency as a matter of law certainly a five-second time span can present a jury question.

The instruction given by the trial court was identical to the uniform emergency set forth in Wis J I—Civil, Part I, 1015. The instruction not only sets forth the emergency doctrine correctly but specifically advises the jury that the benefit of the rule cannot be extended to a driver who, by his own negligence, brought about or contributed to the emergency. If the jury believed the testimony of the plain

tiff they could extend to him the benefit of the emergency doctrine. It was not error to give the instruction.

The defendant asserts that, as a matter of law, the causal negligence of the plaintiff was equal to or greater than that of Rogowski. Consistent with many prior pronouncements, we stated in *Maus v. Cook* (1961), 15 Wis. (2d) 203, 206, 112 N. W. (2d) 589:

"The court is particularly loath to overturn a jury verdict on the comparison of the negligence between a plaintiff and a defendant. *Niedbalski v. Cuchna* (1961), 13 Wis. (2d) 308, 318, 108 N. W. (2d) 576. It is only in unusual fact situations that the court will disturb the jury's comparative-negligence answers. *Mullen v. Reischl* (1960), 10 Wis. (2d) 297, 305, 103 N. W. (2d) 49."

If the jury concluded that Rogowski was in plaintiff's lane of travel just before or at the time of the impact as they had a right to do under the credible evidence presented to them, Rogowski's negligence was the dominant cause of the accident. The court cannot, as a matter of law, disturb this comparative-negligence finding.

The defendant, as a final contention, urges that we should grant a new trial in the interests of justice.

"This court will not exercise this discretion unless it is convinced that there has been a probable miscarriage of justice—viewing the case as a whole." Chapnitsky v. McClone (1963), 20 Wis. (2d) 453, 467, 122 N. W. (2d) 400.

We conclude, as the able trial judge did, that this case presented disputed facts which were resolved by the jury within their proper province.

*By the Court.*—Judgment affirmed.