Cook, by Guardian *ad litem,* and another, Plaintiffs and Respondents, v. Thomas and another, Defendants: Miller and another, Defendants and Appellants.

*September 28—November 24, 1964.*

468

For the appellants there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm* of Green Bay, and oral argument by *John C. Whitney*.

For the respondents there was a brief by *Davis, Soquet & Cherney* of Green Bay, and oral argument by *Colburn G. Cherney*.

HALLOWS, J. The basic question raised by the defendants'-appellants' motions for a nonsuit, a directed verdict, and finally to change the answers in the verdict, is whether Miller was entitled to the application of the emergency rule as a matter of law. The trial court in instructing the jury gave the standard emergency-rule instruction, Wis J I— Civil, Part I, 1015, and in sustaining the verdict reasoned in an exhaustive 73-page opinion the jury could have reasonably found that no emergency existed and Miller was negligent in his speed and in the management and control of his auto or in the alternative that although an emergency existed Miller contributed to the emergency by his negligence as to speed and management and control and therefore deprived himself of the benefit of the rule.

There are several versions of the accident but it is at least agreed the weather was stormy, snow was blowing, the road was hard to see and slippery, and the cars were being driven with their lights on and with their windshield wipers working. Highway 41 at the scene of the accident is approximately 22 feet wide and runs generally north and south. Miller was driving south with a car preceding him some 250 feet and nine or 10 cars following him. Thomas was proceeding north in a line of cars when his car skidded into Miller's lane.

According to Miller's version, he was driving about 30 miles per hour shortly before the accident. He stated to a traffic officer after the accident he was going about 25 miles an hour when Thomas swerved into his lane 50 to 75 feet in front of him and the collision occurred about one or one and one-half seconds later while the Thomas car was still headed diagonally toward him in a northwesterly direction.

Thomas testified he was driving 20 miles an hour in his lane when his right-front wheel went off the road onto the shoulder and his car went out of control when he attempted to get it back on the road. He skidded into Miller's lane when Miller was about 300 feet distant. He unsuccessfully attempted to brake his car but it righted itself when the front wheels touched the tire tracks of the southbound lane and started back into Thomas' lane in a northeasterly direction. At this time Miller was 200 to 250 feet away.

The plaintiff Mary Ann Cook testified that immediately before the accident while she was adjusting the radio she heard Miller exclaim, "Oh no" three times and glancing up saw the Thomas car coming into their lane about 200 feet away and within four or five seconds the impact occurred. She testified Miller was traveling 15 to 20 miles per hour and did not brake or turn the car. Hicks who was driving behind Miller at 20 miles per hour puts Thomas' car 130 to 150 feet from Miller's when Thomas slid into Miller's

lane, and Dr. Boville driving behind Thomas testified he was driving between 28 and 32 miles an hour and the distance between the Miller and Thomas cars was about 160 feet when Thomas crossed the center line. The testimony of the passengers in the Thomas car puts the distance between the two cars as 200 to 250 feet up to 300 feet.

The testimony in relation to the time which elapsed between the instant the emergency arose and the impact varied from Miller's of one to one and one-half seconds to Dr. Boville's of three or four seconds, to Thomas' of four seconds to Mary Ann Cook's of four to five seconds. However, calculating the time lapse on the basis of the combined various distances between the cars with combinations of their speeds produces time intervals of a maximum of five and seventy-two hundredths seconds as computed by Miller and a minimum of seven and eight-tenths seconds as computed by Thomas.

The application of the emergency rule rests upon the psychological fact that the time which elapses between the creation of the danger and the impact is too short under the particular circumstances to allow an intelligent or deliberate choice of action in response to the realization of danger. Prosser, Law of Torts (3d ed.), ch. 5, p. 171, sec. 33; *Kaestner v. Milwaukee Automobile Ins. Co.* (1948), 254 Wis. 12, 35 N. W. (2d) 190; *Papacosta v. Papacosta* (1957), 2 Wis. (2d) 175, 85 N. W. (2d) 790; *Siegl v. Watson* (1923), 181 Wis. 619, 195 N. W. 867; *Baird v. Cornelius* (1961), 12 Wis. (2d) 284, 107 N. W. (2d) 278; *Deignan v. New Amsterdam Casualty Co.* (1958), 2 Wis. (2d) 480, 87 N. W. (2d) 529. This time interval may in some cases be so short that no choice of alternative action can be made. The reaction is practically instinctive or intuitive and as a matter of law there can therefore be no negligence. See *Klas v. Fenske* (1946), 248 Wis. 534, 22 N. W. (2d) 596. And, this is so for inaction as well as

action. An emergency may exist in a layman's sense, *Hoehne v. Mittelstadt* (1948), 252 Wis. 170, 31 N. W. (2d) 150; *Roberts v. Knorr* (1951), 260 Wis. 288, 50 N. W. (2d) 374, which requires quick action and thinking upon the part of the driver but the time is not so short as to relieve the actor from exercising ordinary care in his reaction to the danger. Whether the doctrine should be applied and if so, whether an instruction should be given to the jury to determine the fact question of the existence of an emergency or whether the doctrine should be applied as a matter of law is in the last analysis a question of degree in terms of time within which a person is required to act.

When this court has held an emergency existed as a matter of law it is apparent the basic reason has been that the time for thinking or deciding what to do when the danger became apparent was so short that a person so confronted through no fault of his own ought not to be held negligent regardless of what he did or did not do to avoid the danger. Under the particular facts an emergency existed as a matter of law involving the following time intervals: *Four seconds, Papacosta v. Papacosta, supra; three and one-half seconds, Havens v. Havens* (1954), 266 Wis. 282, 63 N. W. (2d) 86, 47 A. L. R. (2d) 1; *three seconds, Schumacher v. Klabunde* (1963), 19 Wis. (2d) 83, 119 N. W. (2d) 457; *two and one-half seconds, Hoehne v. Mittelstadt, supra; two seconds, Riehl v. De Quaine* (1964), 24 Wis. (2d) 23, 127 N. W. (2d) 788; *Roberts v. Knorr, supra; less than two seconds, Rude v. Algiers* (1960), 11 Wis. (2d) 471, 105 N. W. (2d) 825. Recently in *Wanserski v. State Farm Mut. Automobile Ins. Co.* (1964), 23 Wis. (2d) 368, 127 N. W. (2d) 264, we held a five-second interval while perhaps not an emergency as a matter of law constituted at least a jury question.

When the time lapse cannot be said to be so short as to constitute an emergency as a matter of law an emergency may still exist as a matter of fact if the time lapse is still too short for deliberate and intelligent choice of action. The emergency rule is a special application of the ordinary-prudent-man rule under like circumstances treating the necessity for rapid decision as a factor "in determining the reasonable character of his choice of action." 2 Restatement, Torts, p. 796, sec. 296, Emergency. In an emergency the law does not require of the actor more than it is reasonable to expect of an ordinary prudent person under the same circumstances and it is considered such a person in an emergency does not necessarily make the best, safest, or wisest choice of action or inaction.

Miller contends the time interval was variously estimated by witnesses at one to five seconds. This is correct but there is other testimony of a greater time interval arrived at by computing the various distances between the cars with the combined speeds of the two cars. If this court could accept, which it cannot, a five-second interval as a certainty, a most difficult question would be presented. But five seconds is not a certainty and there is evidence that the time interval could be longer, so much longer a question of fact arises. Miller was given the benefit of the emergency instruction. On the state of the record we cannot hold that an emergency existed as a matter of law.

The jury in its ultimate-fact verdict found Miller 25 percent causally negligent. This finding we consider to be sustained by the evidence. The jury could have found that the time lapse was so great as not to create an emergency and Miller was negligent in management and control of his car in not applying his brakes or turning to the right. It is contended it was so slippery that braking might put one into

a skid but there was testimony that a gradual turn to the right could have been made. If the jury adopted the Thomas version, which it could well have done, Miller would have had time to do some braking and turning. Whether such action would ultimately have avoided the collision in fact is not the test. The test is whether such action would have tended to avoid the impact or lessened its severity.

The jury could have on the evidence found Miller guilty of speed in view of the conditions of the weather and the road. If, as Miller contends, it was so slippery it was dangerous to brake, the jury could determine Miller's speed of about 30 miles per hour was greater than was reasonable and prudent under the conditions and was causal because it prevented or retarded Miller after seeing the danger from slowing down or stopping. *Thelen v. Machotka* (1954), 268 Wis. 1, 66 N. W. (2d) 684; *Jewell v. Schmidt* (1957), 1 Wis. (2d) 241, 83 N. W. (2d) 487; *Heagney v. Sellen* (1956), 272 Wis. 107, 112, 74 N. W. (2d) 745, 75 N. W. (2d) 801.

The conflicting testimony presented a jury question. The jury chose to accept the Thomas version and rejected Miller's. Since there is credible evidence to support the verdict, this court cannot adopt Miller's version as a matter of law.

*By the Court.*—Judgment affirmed.