SCHILLING, Plaintiff and Respondent, v. GALL and another, Defendants and Respondents: HECKEL and another, Defendants and Appellants.

*November 2—November 29, 1966.*

16

For the defendants-appellants there was a brief by *Schmidt & Thibodeau* of Wisconsin Rapids, and oral argument by *Leon S. Schmidt.*

For the plaintiff-respondent there was a brief by *Hoerl, Day & Kamps* of Marshfield, and oral argument by *John D. Day.*

For the defendants-respondents there was a brief by *Brazeau, Brazeau, Potter & Cole* of Wisconsin Rapids, and oral argument by *John M. Potter.*

GORDON, J.

### *The Comparison of Negligence.*

The appellant reasons that if Mr. Schilling was negligent, as the jury held, it must have been based upon his having stopped on the highway without lights. Mr. Heckel asks: How can 60 percent of the negligence be attributed to me when Mr. Schilling has committed such serious violations?

The answer to Mr. Heckel's question is that we do not know precisely what conduct on the part of Mr. Schilling was deemed by the jury to be negligent. There was a basic conflict in the testimony, and various combinations of fact-finding on the part of the jury were permissible. Mr. Heckel testified that the truck was stopped without lights, but Mr. Decorah said that the truck was moving forward and that the lights were on. We may not assume that the jury adopted Mr. Heckel's view; the jurors could have accepted a portion of one version and a portion of another and concluded that there was some negligence on the part of Mr. Schilling, but not so much as Mr. Heckel charges. The jury's

apportionment of 30 percent of the total negligence to Mr. Schilling is supportable upon the record in this case.

We discussed the negligence of a driver who collides with a vehicle parked on the highway in *Pettit v. Olson* (1960), 11 Wis. (2d) 185, 191, 105 N. W. (2d) 280:

"... we are not committed to the concept that negligence of an operator of a motor vehicle who at night collides with a vehicle stopped on a street, road, or highway is, as a matter of law, at least equal to that of the driver of the stopped vehicle.

"The converse of the above is also true. The negligence of an operator of a vehicle parked on the highway at night is not, as a matter of law, at least equal in negligence to the driver who collides with the parked vehicle."

The jury may have believed that Mr. Heckel was negligent in not seeing the Schilling truck sooner, or that Mr. Heckel was traveling too fast, or finally that he failed properly to manage and control his car after he observed the truck. The assessment of 60 percent of the total negligence to Mr. Heckel was not erroneous as a matter of law.

Mr. Heckel also contends that Mr. Gall's negligence was equal to that of the appellant. Mr. Gall struck Mr. Schilling when the latter apparently crawled into the lane opposite from that in which his truck had been located; he moved into Mr. Gall's lane of travel. Mr. Gall did not see Mr. Schilling until he was within 50 feet of him, and this would sustain a finding that Mr. Gall's lookout was deficient. In assessing 10 percent of the total negligence to Mr. Gall, the jury was within its proper sphere. We have often pointed out that a court will rarely disturb a jury's comparison of negligence. *Davis v. Skille* (1961), 12 Wis. (2d) 482, 489, 107 N. W. (2d) 458; *Zehren v. F. W. Woolworth Co.* (1960), 11 Wis. (2d) 539, 545, 105 N. W. (2d) 563.

## The Emergency Instruction.

The trial court denied Mr. Heckel's request that the emergency instruction (Wis J I—Civil, Part I, 1015) be given on his behalf. Mr. Heckel testified that he observed the Schilling truck approximately 125 feet ahead of him, but he was unable to stop and avoid hitting such truck. Although Mr. Heckel said that it took "maybe a minute or two" before he reached the Schilling vehicle, it is more likely that the time involved was shorter than that appraisal. However, if Mr. Heckel were going at the moderate speed he described, we doubt that a true emergency existed from a time standpoint. In *Cook v. Thomas* (1964), 25 Wis. (2d) 467, 471, 131 N. W. (2d) 299, we said:

> "The application of the emergency rule rests upon the psychological fact that the time which elapses between the creation of the danger and the impact is too short under the particular circumstances to allow an intelligent or deliberate choice of action in response to the realization of danger."

A more conclusive basis for the denial to Mr. Heckel of the emergency instruction is that his own negligence helped create any emergency which existed. Even viewing the testimony favorably to Mr. Heckel, it is clear that he was negligent in some degree. The jury was not asked to specify the particular type of negligence, and we do not now have to decide whether it was as to speed, lookout, or management and control.

Mr. Heckel was unable to stop his car in the distance that he could see ahead of him and was negligent as a matter of law for that reason. *Lentz v. Northwestern Nat. Casualty Co.* (1960), 11 Wis. (2d) 462, 105 N. W. (2d) 759. In *Shaw v. Wuttke* (1965), 28 Wis. (2d) 448, 453, 137 N. W. (2d) 649, this court said:

> "If there is a factual dispute as to such negligence and assuming the time element is so short as to make

the doctrine otherwise applicable, a person is entitled to the emergency-doctrine instruction and it is for the jury to determine its application. . . . If, however, it can be held a person was negligent as a matter of law and such negligence contributed to the emergency, then such person is not entitled to the emergency-doctrine instruction."

The *Lentz Case,* cited above, not only demonstrates that Mr. Heckel was not entitled to the benefit of the emergency instruction, but it also suggests that it may have been prejudicial error for the court to have given such instruction. In the *Lentz Case,* the defendant hit a stationary truck from the rear, claiming that he did not see a taillight on the truck. The court pointed to our persistent holdings that it is negligence for a driver to travel at a speed at which he is unable to stop within the distance he can see ahead of him.

### Pecuniary Loss to an Estranged Wife.

This court has apparently never heretofore ruled on the question of an estranged wife's entitlement to damages for pecuniary loss on the death of her husband. Mrs. Schilling had not lived with her husband or received any financial support from him for the three years immediately preceding his death. There were, however, no legal proceedings commenced to affect the marriage.

We believe that a wife in Mrs. Schilling's position is entitled to damages for pecuniary loss, and we reach such conclusion not only because courts in other states have so held, but, more importantly, because it seems a wise rule. Had Mr. Schilling lived, his wife would have been entitled to enforce support from him to the extent of her needs and his capacity. Since Mrs. Schilling was his lawful spouse at the time of his death, she was entitled to a share in any estate which he may have left.

The Minnesota supreme court was faced with this issue in *Falk v. Chicago & N. W. R. Co.* (1916), 133

Minn. 41, 45, 157 N. W. 904, and resolved it in favor of the widow:

"It is claimed that no more than nominal damages should have been awarded. . . . The widow had a legal right to support from her husband. The continuance of his life was presumptively of pecuniary value to her. . . . This presumption was not conclusively rebutted. The deceased left his family 20 years ago. For the last seven years of his absence they did not hear from him and he had not given them support. . . . It seems that his obligation to support his wife rested lightly upon him and that the likelihood of his resuming the burden was not great. There was, however, a legal liability which she might enforce to the extent of his ability to respond. He was addicted to the use of intoxicating liquor. He was 53 years old, a tailor by trade, apparently a capable workman when sober, and when working received good wages; but because of his unfortunate habit his employment was only casual. We are unable to hold that only nominal damages could be recovered. If a jury had returned a verdict of nominal damages, or for a sum very much smaller than the amount of the verdict, the plaintiff could not complain. The question was one for the jury and it is not for us."

It has also been said that the fact that the husband was not living with his wife at the time of his death is "wholly irrelevant" in determining whether the wife could recover damages. *Louisville & N. R. Co. v. Howser's Administrator* (1923), 201 Ky. 548, 556, 257 S. W. 1010. See also *Ingersoll v. Detroit & M. R. Co.* (1910), 163 Mich. 268, 128 N. W. 227, and cases cited therein. The *Ingersoll Case* quoted the following rationale for permitting recovery, at page 279:

" 'The marital relation still continued to exist between the parties at the time of the death of the husband; and, whilst they had not, for the period stated, lived together as man and wife, her legal rights had suffered no change or impairment. It is very clear from the testimony in the record that the wife had not by her own wrong forfeited her right to a decent support from her husband in

accordance with her station in life. The marital relation created this right, and it continued to exist in law to the death of the husband; and this, too, without reference to the will or wishes of the husband.' "

See also 18 A. L. R. 1409, supplemented by 90 A. L. R. 920.

The trial court reduced the jury's award of $11,500 for pecuniary loss to the sum of $8,844, using an option technique. The trial court considered the husband's life expectancy in making its allowance in favor of the wife. We do not believe that there was any abuse of discretion by the trial court. *Moldenhauer v. Faschingbauer* (1966), 30 Wis. (2d) 622, 141 N. W. (2d) 875.

*By the Court.*—Judgment affirmed.