SCHEMENAUER and another, Plaintiffs and Respondents, v. TRAVELERS INDEMNITY COMPANY and others, Defendants and Respondents: ST. PAUL FIRE & MARINE INSURANCE COMPANY and others, Defendants and Appellants. *

*February 27—April 11, 1967.*

* Motion for rehearing denied, with costs, on June 6, 1967.

300

302

For the defendants-appellants St. Paul Fire & Marine Insurance Company and Francis J. Coffey there was a brief and oral argument by *Raymond R. Colwin* of Fond du Lac.

For the defendants-appellants Home Mutual Insurance Company and Erwin F. Kuehl there were briefs by *Worthing, Schneider & Mickiewicz* of Fond du Lac, and oral argument by *Kenneth E. Worthing.*

For the plaintiffs-respondents there were briefs by *Marth & Marth* of West Bend, and oral argument by *William J. Marth.*

For the defendants-respondents there was a brief and oral argument by *Edward T. O'Neill* of Fond du Lac.

HALLOWS, J.   Although there are many issues raised, only those which are dispositive of the case and some which may again appear on the retrial will be considered.

### Coffey's Appeal.

Coffey argues for reversal on the ground he was confronted with an emergency as a matter of law and the credible evidence is insufficient to support a finding of causal negligence on his part. These arguments require a review of the evidence which under long-established rules must be viewed in a light most favorable to support the verdict. *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 101 N. W. (2d) 83; *Ruid v. Davis* (1959), 8 Wis. (2d) 288, 99 N. W. (2d) 129; *Maus v. Cook* (1961), 15 Wis. (2d) 203, 112 N. W. (2d) 589. Coffey claimed he

had amnesia and could not remember any of the facts of the accident or what transpired for six hours thereafter, so they must be found elsewhere. Neither Mrs. Prefontaine nor Mrs. Schemenauer saw Coffey except as a blur immediately before the impact. The testimony is in conflict whether Mrs. Prefontaine stopped her car at the arterial sign. She claims she did; defendant Kuehl testified she did not but came into the intersection at about 55 miles per hour. Kuehl, the only witness who had any direct observance of Coffey, testified he saw Coffey approach the intersection from the east at about 55 miles per hour. He did not observe Coffey slow down or swerve before colliding with the Prefontaine car. Although Highway 23 is in a broad curve, the intersection with County Trunk G is plainly visible from a distance at least 500 feet to the east, in which distance there is a warning sign, curve sign, junction sign, and school sign.

Coffey's passenger, his fiance, testified she was dozing and listening to the radio and did not hear a horn or feel the application of brakes before the impact. There were no skid marks left by the Coffey car or any evidence that his car was braked. The impact was in his lane of travel. Coffey had physical defects consisting of an artificial limb on his right leg below the knee, his left ankle had been fused and was partially immobile and his hands were deformed. From this evidence the jury had a right to find Coffey drove his car at approximately 55 miles per hour into the intersection without seeing the Prefontaine car and was therefore causally negligent as to lookout.

But Coffey argues he was faced with an emergency as a matter of law because whether Mrs. Prefontaine stopped for the arterial or not, in either case she pulled out in front of him so suddenly as to leave no time, or at the most two seconds, for defensive action; hence, no skid marks. While this inference might be drawn, the jury apparently did not accept this view of the accident although it had

been given the emergency instruction. The jury apparently thought Anne Marie Prefontaine stopped for the arterial highway and Coffey did not see her, or would have seen her sooner if he had observed the warning signs. To hold an emergency existed as a matter of law the facts must give rise to only one inference that the time element was so short as not to permit defensive action.

The difficulty with Coffey's argument is that other reasonable inferences as to the existence or nonexistence of an emergency might also be drawn. Coffey might have had as much as six or seven seconds to determine action if he had seen Mrs. Prefontaine stop at the sign, if she did stop. We cannot hold as a matter of law that Coffey had only two seconds in which to take action. In *Cook v. Thomas* (1964), 25 Wis. (2d) 467, 471, 131 N. W. (2d) 299, we said:

"The application of the emergency rule rests upon the psychological fact that the time which elapses between the creation of the danger and the impact is too short under the particular circumstances to allow an intelligent or deliberate choice of action in response to the realization of danger. Prosser, Law of Torts (3d ed.), ch. 5, p. 171, sec. 33; *Kaestner v. Milwaukee Automobile Ins. Co.* (1948), 254 Wis. 12, 35 N. W. (2d) 190; *Papacosta v. Papacosta* (1957), 2 Wis. (2d) 175, 85 N. W. (2d) 790; *Siegl v. Watson* (1923), 181 Wis. 619, 195 N. W. 867; *Baird v. Cornelius* (1961), 12 Wis. (2d) 284, 107 N. W. (2d) 278; *Deignan v. New Amsterdam Casualty Co.* (1958), 2 Wis. (2d) 480, 87 N. W. (2d) 529. This time interval may in some cases be so short that no choice of alternative action can be made. The reaction is practically instinctive or intuitive and as a matter of law there can therefore be no negligence. See *Klas v. Fenske* (1946), 248 Wis. 534, 22 N. W. (2d) 596. And, this is so for inaction as well as action. An emergency may exist in a layman's sense, *Hoehne v. Mittelstadt* (1948), 252 Wis. 170, 31 N. W. (2d) 150; *Roberts v. Knorr* (1951), 260 Wis. 288, 50 N. W. (2d) 374, which requires quick action and thinking upon the part of the driver but the time is not so short as to relieve the actor from exercising ordi-

nary care in his reaction to the danger. Whether the doctrine should be applied and if so, whether an instruction should be given to the jury to determine the fact question of the existence of an emergency or whether the doctrine should be applied as a matter of law is in the last analysis a question of degree in terms of time within which a person is required to act."

In *Shaw v. Wuttke* (1965), 28 Wis. (2d) 448, 453, 137 N. W. (2d) 649, we stated:

"Before a party is entitled to the benefits of the emergency doctrine he must be free from negligence which contributed to the creation of the emergency. *Cook v. Thomas* (1964), 25 Wis. (2d) 467, 131 N. W. (2d) 299; *Borowske v. Integrity Mut. Ins. Co.* (1963), 20 Wis. (2d) 93, 121 N. W. 287; *Baird v. Cornelius* (1961), 12 Wis. (2d) 284, 107 N. W. (2d) 278; *Blasi v. Drafz* (1960), 12 Wis. (2d) 14, 106 N. W. (2d) 307; *Deignan v. New Amsterdam Casualty Co.* (1958), 2 Wis. (2d) 480, 87 N. W. (2d) 529; *Hutzler v. McDonnell* (1942), 239 Wis. 568, 2 N. W. (2d) 207. If there is a factual dispute as to such negligence and assuming the time element is so short as to make the doctrine otherwise applicable, a person is entitled to the emergency-doctrine instruction and it is for the jury to determine its application."

There was sufficient credible evidence to sustain a finding of causal negligence on Coffey's part and no emergency existed as a matter of law.

At the trial it was apparent Coffey's claim of amnesia was under attack. During the trial Coffey questioned a witness for the plaintiff regarding injuries capable of producing amnesia but did not call his own treating physician or explain why he was not called to fortify the claim of amnesia. At the request of the plaintiff the court gave the jury the absent-witness instruction, Wis J I—Civil, Part I, 410.[1] This is now claimed to be error. Coffey had

---

[1] "410 Witness: Absence

"You are instructed that if a party fails to produce the testimony of an available witness as to a material fact of the case, and it would appear naturally in the interest of that party to produce

no duty to prove he had amnesia; whether he had that condition or not affected his credibility and was not an element of his defense. The question whether the absent-witness instruction is applicable to the subsidiary question of a party's credibility or is confined to material facts constituting a cause of action or a defense has apparently not been decided by our court or in other jurisdictions.

The doctrine of one's conduct as evidence of a weak cause is well established in the law of evidence and in this state. Professor Wigmore in 2 Wigmore, Evidence (3d ed.), p. 162, sec. 285, states, "The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party." He also points out this inference cannot be fairly made except upon certain conditions and is open to explanation by circumstances which make some other hypothesis a more natural inference than the party's fear of exposure. See Swietlik, Hearsay Rule in Wisconsin—Part Two, Vol. 1, No. 3, Wisconsin Continuing Legal Education (1961), pp. 73, 96; 29 Am. Jur. (2d), Evidence, p. 224, sec. 180; *Booth v. Frankenstein* (1932), 209 Wis. 362, 370, 245 N. W. 191; *Shaw v. Wuttke, supra.*

Coffey's argument does not concern the accuracy of Wis J I—Civil, Part I, 410 but whether the instruction should have been given at all. We therefore do not pass upon its sufficiency and accuracy as an instruction but we note it refers to "a material fact of the case." Generally the rule is phrased in language of evidence which would prop-

him, and the party fails to give a satisfactory explanation for his failure to produce the witness, you may infer that the evidence which he would give would be unfavorable to the party failing to produce such witness."

erly be used to prove a cause of action or a defense. But perhaps this language is broad enough to cover the issue of credibility and the conditions for the application of the rule to this issue would seem to exist. Coffey's treating physician would know if he had amnesia and could testify to the type of injury Coffey received and whether it would result in amnesia. The treating doctor was presumably available as a witness to his client and it was more natural for Coffey to call his own doctor than for the plaintiffs to do so. In *Feldstein v. Harrington* (1958), 4 Wis. (2d) 380, 90 N. W. (2d) 566, we applied the rule to a situation in which the defendant's physician who had examined the plaintiff was not called to testify as to the plaintiff's physical condition and held it was error not to permit the plaintiff to prove he had been examined by the defendant's physician at the defendant's request so that comment on the defendant's failure to call the physician as a witness could be made to the jury.

We note instruction No. 410 is phrased in terms of an "available" witness. Availability is used instead of the phrases "within the control" or "power" which have been used in Wigmore and in our prior cases to express the prerequisite relationship between the party and the witness. The word "availability" must be understood to be used in the limited sense in which "control" or "power" was used as conditions for the application of the doctrine. See *Feldstein v. Harrington, supra;* 2 Wigmore, Evidence (3d ed.), p. 162, sec. 285; *Rudy v. Chicago, M., St. P. & P. R. Co.* (1958), 5 Wis. (2d) 37, 47, 92 N. W. (2d) 367; *Coney v. Milwaukee & Suburban Transport Corp.* (1959), 8 Wis. (2d) 520, 99 N. W. (2d) 713; Anno. Presumption—Failure to Call Witness, 5 A. L. R. (2d) 893.

We think Coffey's claim of retrograde amnesia is a sufficiently important affirmative fact to warrant application of the doctrine. While the claim of amnesia denied Coffey the advantage or disadvantages of his own

testimony, it also prevented his adverse examination and cross-examination by the opposing parties. The proof of a cause of action or a defense depends upon its acceptance as being credible. Consequently, credibility is basically an important element in every lawsuit and may be an issue upon which the outcome of the case turns. We hold, therefore, although the claim of amnesia as a result of an automobile accident need not be proved as a material fact in a cause of action nevertheless when that state of mind is in issue, as here, the doctrine of the failure to produce evidence as indicating the unfavorable tenor of the evidence may be applicable. We find no error in the court's giving the absent-witness instruction on the facts presented.

## Kuehl's Appeal.

Kuehl argues for reversal on the ground of insufficiency of the evidence of negligence on his part and also of being confronted with an emergency as a matter of law. As we believe there is merit in the first argument, we do not reach the second. Kuehl was found 10 percent negligent by the jury and this finding was sustained by the trial court, which stated in its opinion Kuehl and his wife lacked candor in their testimony, a reasonable inference could be drawn that Kuehl did not sufficiently manage and control his vehicle in the face of an apparent disaster and the speed of the Kuehl automobile at the time it came in contact with the Prefontaine automobile was sufficient to change the direction of the Prefontaine automobile, spin it around and force it back up hill.

We think the trial court was in error. The physical facts do not indicate speed and resulting force on Kuehl's part. The Prefontaine car was not swung around in the impact or forced up a hill. It came to rest about five feet south of the impact and slightly to the east in the general

direction of its line of force; while the much heavier Oldsmobile of Kuehl reversed its course at the point of impact and rolled backwards some 61 feet. As to management and control, Kuehl was proceeding east on Highway 23 at approximately 55 miles per hour and when he was 300 to 400 feet from the intersection saw the Prefontaine car coming from the north. Mrs. Kuehl testified she saw the Prefontaine car was not going to stop but Kuehl, the driver, testified he did not conclude there was going to be a collision between the Prefontaine car and the oncoming Coffey car when he first saw the two cars. However, he took his foot off the accelerator to slow down and while going 35 to 40 miles per hour about 150 to 200 feet from the intersection he saw the Coffey and the Prefontaine cars collide; he then braked his car hard. He left approximately 34 feet of skid marks and had stopped or practically stopped when the Prefontaine car careened sideways or backward down the road out of control and collided with his car. At the time of impact he was in the outer of the two lanes south of the center line, or about 10 feet south of the center line and four to five feet north of the south edge of the highway. The Prefontaine car left skid marks from impact-to-impact of about 100 feet.

If Kuehl was 200 feet from the intersection at the time Coffey and the Prefontaine cars collided, he traveled about 100 feet thereafter. If he was 150 feet from the first impact he traveled only 50 feet before the second impact. We think Kuehl's negligence is not dependent upon whether or not his car was stopped or only slowed down at the time of the impact with the Prefontaine car. Kuehl was on an arterial highway driving at a lawful rate of speed. He was on his side of the road. Being on the arterial he still had a duty to maintain a lookout, which he did. See *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 99 N. W. (2d) 163. He saw the Coffey and Prefontaine cars when he was 300 or 400 feet from the intersection and in time to stop before ar-

riving at the intersection if he was duty bound at that time to brake hard and stop instead of slowing down as he did. At that time and distance from the intersection Kuehl had a right to expect Mrs. Prefontaine to stop her car for the arterial highway and not to proceed into the intersection without first ascertaining whether she could do so with safety. *Lundquist v. Western Casualty & Surety Co.* (1966), 30 Wis. (2d) 159, 140 N. W. (2d) 241; *Magin v. Bemis* (1962), 17 Wis. (2d) 192, 116 N. W. (2d) 129.

Mrs. Prefontaine claims she stopped for Highway 23 and Kuehl was far enough away that she could cross the highway before he arrived at the intersection. On the basis of this testimony there was no negligence on the part of Kuehl in not stopping his car sooner than he did. True, under *Magin v. Bemis, supra,* one can be found negligent in the management and control of his car on an arterial highway in not attempting to avoid a collision where the other driver not on the arterial does not yield the right-of-way, but that does not seem to be the case here. Kuehl did react to the situation ahead by slowing down and we think reasonably so. The fact he did not stop sooner or at some other place in the highway so a car skidding down his lane of traffic out of control would not fortuitously hit him is not negligence. It is argued that perhaps Kuehl was farther from the intersection when he first saw the Prefontaine car and his car had not reached a full stop when the second collision occurred. This argument is hardly substantiated by the record and if it were, it would not sustain a verdict of negligence. Disbelief of Kuehl's story does not create any positive evidence of negligence and leaves only the physical facts which do not *per se* support the verdict as they did in *Evjen v. Packer City Transit Line* (1960), 9 Wis. (2d) 153, 100 N. W. (2d) 580.

Since a new trial is required and the amount of damages are attacked on appeal, the retrial will be on all

issues. It is argued that in the event of a reversal on these appeals the judgment should stand as against Anne Marie Prefontaine and her insurers because they have not appealed. We think not. The plaintiffs have also asked us to consider whether full costs were properly denied them. They contend there were two plaintiffs and seven defendants and each plaintiff is entitled to a $100 fee as statutory costs against each of the seven defendants under sec. 271.04, Stats., or a total of $1,400, relying on *Gospodar v. Milwaukee Automobile Ins. Co.* (1946), 249 Wis. 332, 24 N. W. (2d) 676, 25 N. W. (2d) 257. We think the trial court was correct in considering the facts to be ruled by *Martell v. Klingman* (1960), 11 Wis. (2d) 296, 105 N. W. (2d) 446, and treating each defendant driver and his insurer as being one defendant and allowing only one fee of $100 for each such defendant, or a total of $600 to the two plaintiffs.

*By the Court.*—The judgment is reversed and a new trial is granted against the defendants other than Erwin F. Kuehl and his insurer Home Mutual Insurance Company.

HANSEN, J., took no part.