GAGE, Plaintiff and Respondent, v. SEAL and another, Defendants and Appellants: STOKELY-VAN CAMP, INC., and another, Defendants and Respondents.*

*October 30—November 28, 1967.*

* Motion for rehearing denied, without costs, on January 30, 1968.

662

For the defendants-appellants there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm* of Green Bay, and oral argument by *James L. Everson*.

For the plaintiff-respondent there was a brief by *Bachman, Cummings & McIntyre* of Appleton, and oral argument by *J. Joseph Cummings*.

For the defendants-respondents there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Lloyd J. Planert*.

HANLEY, J.  The appellant Sandra Seal contends that she is entitled to a new trial because it was prejudicial error not to give the requested instruction on the application of the emergency doctrine and, further, that a new trial should be granted because it was prejudicial error not to inform appellants' counsel that a signaling instruction earlier refused would be given and in submitting a special verdict to the jury in which issues of negligence, causation, and comparison appeared in single questions.

"The application of the emergency rule rests upon the psychological fact that the time which elapses between the creation of the danger and the impact is too short under the particular circumstances to allow an intelligent or deliberate choice of action in response to the realization of danger. . . ." [1]

"There are three basic requirements which must be met before the emergency doctrine can be applied. First, the party seeking the benefits of the emergency doctrine must be free from negligence which contributed to the creation of the emergency. Second, the time element in which action is required must be short enough to preclude deliberate and intelligent choice of action. Third, the element of negligence being inquired into must concern management and control before the emergency doctrine can apply. Unless a favorable finding on each of these elements is made, the emergency doctrine cannot be applied to a course of conduct which led to an automobile accident." [2]

The trial judge refused to give the emergency instruction because of his opinion that under the evidence in the case appellant Seal was not free of negligence. However, the trial court made no finding that appellant Seal was guilty of negligence as a matter of law. Without dispute appellant Seal's car was in the wrong lane at the time of the collision.

"There are two procedures which are used to apply the emergency doctrine. The court may apply the emergency doctrine as a matter of law, thereby absolving a party of all negligence in the action. The doctrine is generally applied as a matter of law when the time interval is so short that the reaction is practically instinctive or intuitive. However, the time element may not be so short as to constitute an emergency as a matter of law, yet it may be short enough to warrant a jury finding that an emergency existed. The *Cook Case* clearly contemplates that the application of the doctrine may be for the jury.

"The determination of whether a party's negligence was a factor in producing the emergency, thus barring

---

[1] *Cook v. Thomas* (1964), 25 Wis. 2d 467, 471, 131 N. W. 2d 299.
[2] *Geis v. Hirth* (1966), 32 Wis. 2d 580, 586, 146 N. W. 2d 459.

the application of the emergency rule, is, in many instances, also a jury issue. In *Shaw v. Wuttke* (1965), 28 Wis. (2d) 448, 453, 137 N. W. (2d) 649, the court said:

" 'If there is a factual dispute as to such negligence and assuming the time element is so short as to make the doctrine otherwise applicable, a person is entitled to the emergency-doctrine instruction and it is for the jury to determine its application. [Case cited.] If, however, it can be held a person was negligent as a matter of law and such negligence contributed to the emergency, then such person is not entitled to the emergency-doctrine instruction.' " [3]

The appellants contend there is credible evidence to support their theory that both rigs were entirely on the shoulder of the road and that Nicholas Grosskopf turned his rig from a point entirely on the eastbound shoulder to a point partially on the paved portion as the Seal vehicle was overtaking and about to pass, thus creating an emergency, excusing the presence of the Seal automobile in the left lane.

There is conflicting testimony regarding the position of Grosskopf's machine as it traveled along the highway. The driver of the rig behind his, James Dolan, testified that the Grosskopf rig was on the highway two feet or better from the center line. Grosskopf testified at one point that before the impact between the two automobiles he was driving his rig with about four or five feet on the surface of the road and with about three or four feet on the shoulder. He testified at another point as follows:

"*Q.* Shortly before this impact took place isn't it true that your rig was partly on the shoulder and partly on the highway, but that most of it was on the shoulder? *A.* I think it was about half—about half on and half off— maybe a little more.

"*Q.* Isn't it a fact that so far as the left side of your rig is concerned it was three or four feet on the hard surface and the rest was on the shoulder? *A.* Yes, approximately that. Yes."

---

[3] *Id.* at pages 587, 588.

Earlier Grosskopf gave a statement to a representative of the Liberty Mutual Insurance Company, Stokely-Van Camp's insurer, that most of his rig was on the shoulder. Thus the general import of Grosskopf's testimony is that he was traveling partially on and partially off the highway.

Aloysius Schuh, who was supervising the moving of the crew of harvesting machines for Stokely-Van Camp, Inc., testified that Grosskopf's rig maintained a position about three feet from the center line, but prior statements of his placed the unit on the shoulder.

Stanley Seal, the husband of the appellant and a passenger in the Seal automobile, testified that the rig proceeded down the highway entirely on the shoulder. The appellant Sandra Seal has no recollection of the accident.

There is also a conflict in the testimony as to whether the Grosskopf rig deviated from a direct course of travel just prior to the accident. Grosskopf himself denied any deviation but admitted that his unit which he was pulling by a tractor, may have swayed or swerved, but to no great extent. Mr. Schuh testified that no deviation occurred. The plaintiff testified that the top of the unit was swaying violently but that he did not know if its wheels moved to the left. Mr. Seal testified that as they approached within 50 yards of the rig, it was entirely on the shoulder and that he then glanced at the speedometer, looked up again and saw that the harvesting unit was then from one to three feet onto the paved portion of the road. He testified his wife took evasive action immediately after he looked up. He also testified that the speed of their car was 45 miles per hour.

The only instruction given by the trial court concerning Sandra Seal's conduct was the following:

"In considering Question No. 1, inquiring about the fault of Sandra Seal, you are further instructed that a safety statute provides that on any roadway where traffic is permitted to move in both directions the operator of a vehicle shall not drive to the left of the center line of the

roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be done in safety. To comply with the statute the operator must, before he makes such movement, exercise reasonable care to make an efficient lookout, as that term has been defined for you. He must not only exercise ordinary care to determine the location of other vehicles that may be approaching from the opposite direction, but he must also exercise reasonable judgment in calculating the time required for him to overtake and pass the vehicle preceding him as well as the distance away and the speed of any vehicle approaching from the opposite direction. You will carefully weigh the credible evidence and reasonable inferences from the evidence bearing on this inquiry and make such answer thereto as you feel in good conscience should be made to determine, first of all, whether Sandra Seal was at fault and, if so, the extent and percentage of her contribution to the collision and resulting damages."

Since the trial court did not hold that Sandra Seal was negligent as a matter of law, the judgment cannot stand unless this court can determine as a matter of law that one of the three basic requirements for the application of the doctrine is not met. In addition, this court is bound to construe the evidence in the light most favorable to the party seeking the instruction.[4]

The testimony favoring the appellant's position, that of Mr. Seal and part of Mr. Gage's, is somewhat imprecise; and Mr. Seal's credibility has been impeached. But the evidence, construed favorably to the appellants, indicates that the two rigs were 150 yards apart and that the Seal automobile was traveling at a rate of 45 miles per hour. The Seal automobile successfully passed the first rig without deviation from the right lane of travel, the rig being entirely on the shoulder. Mr. Seal's testimony is that when the Seal automobile was even with the first rig he then noticed the second, which was then on

---

[4] *Id.* at page 589.

the shoulder of the road. He then testified that when they were within 50 yards of the rig, he glanced at the speedometer. He estimated that it took him "a second or so" to read the speedometer, which at that time still read 45 miles per hour.

Upon taking his eyes off the speedometer and looking up at the road, he noticed the rig partially on the road, two to three feet. His wife took evasive action almost immediately.

Supposing that the Grosskopf rig invaded the right lane immediately upon Mr. Seal's glancing down at the speedometer, Sandra Seal had something less than three seconds in which to decide what to do to avoid collision with it. For traveling at the rate of 45 miles per hour, which is 66 feet per second, the Seal automobile would travel 198 feet in three seconds. Mr. Seal testified that when he glanced at the speedometer the Seal automobile was 50 yards distant from the rig.

Assuming the rig was going 10 miles per hour, in three seconds it would have traveled 44 feet. Thus, the Seal automobile would be 198 feet from its location when Stanley Seal glanced at the speedometer; the rig would be 194 feet from the same location (the 50 yards which Mr. Seal testified was the distance between the Seal automobile and the Grosskopf rig at the time he looked away and the 44 feet it would travel in three seconds).

Thus, Sandra Seal had less than three seconds with which to avoid a collision with the Grosskopf rig. It is true that the evidence that the Grosskopf rig suddenly swerved is scant, but it seems to us that the movement of the left side of the rig, placing it from two to three feet on the highway in one or two seconds, could have been sufficient to create an emergency. In *Wanserski v. State Farm Mut. Automobile Ins. Co.* (1964), 23 Wis. 2d 368, 127 N. W. 2d 264, a head-on collision case, the court held that a five-second time span created a jury question whether the facts presented an emergency.

While there is evidence suggesting that Sandra Seal was negligent with respect to causing the emergency, if any there was, at this state of the analysis the court is still bound to construe the evidence in the light most favorable to the party seeking the instruction. Thus, from the testimony of Stanley Seal, it could be inferred that Sandra Seal was in no way negligent up to the time that she was confronted with the Grosskopf rig veering into her lane. Much of the respondents' arguments that Sandra Seal was negligent proceeds on the theory that no deviation of the rig occurred. While it is true that, assuming the deviation, it is still inferable that she was negligent with respect to speed, lookout, and sounding the horn, we believe that these are matters for a properly instructed jury.

There is no doubt that upon the deviation of the Grosskopf rig, any negligence from that time on would involve management and control.

It is interesting to note that had a "fault" verdict not been used in this case, the chances are that the failure to instruct on the emergency doctrine could be harmless error, for it is highly likely that the jury in finding no fault on the part of Stokely-Van Camp reasoned that the Grosskopf rig was partially on the highway and did not deviate and found that Sandra Seal's failure to maintain a proper lookout caused the accident. The fault verdict, telescoping as it does the questions of negligence and causation, leaves one in doubt as to whether no deviation occurred or whether deviation occurred but was not causal. Thus, the failure to instruct cannot be declared harmless on the theory that the jury disbelieved the testimony tending to show an emergency.

We are of the opinion that a jury could find that an emergency existed under the evidence most favorable to the appellant Seal and could also have found that her reaction to this emergency excused her negligence as to her position on the highway.

"The refusal to give the instruction was prejudicial because it severely affected plaintiff Geis' defense to Hirth's allegation of contributory negligence. Her position on the wrong side of the road created an inference of negligence unless it was shown that this was beyond her control. The procedural effect of this inference is to shift the burden of producing evidence that plaintiff Geis' position on the wrong side of the highway was due to a nonnegligent cause, and enough evidence must be produced to support a finding to this effect. In the absence of sufficient evidence to support such a finding, the inference must be sustained. In *La Vallie v. General Ins. Co.* (1962), 17 Wis. (2d) 522, 117 N. W. (2d) 703, the court expressly states that the emergency doctrine refutes any inference of negligence which occurred because the plaintiff was driving on the wrong side of the road.

"Refusal to instruct on the emergency rule deprived plaintiff Geis of a possible defense for her position on the highway. Under the evidence most favorable to her, the emergency instruction would have demonstrated to the jury that she had met the burden of going forward with evidence to justify her improper position on the highway. . . ." [5]

We conclude it was prejudicial error not to give the emergency instruction in view of the evidence in the record.

A new trial is granted but only on the issues raised by the plaintiff's complaint and the cross complaints of the codefendants with respect to the negligence of Sandra Seal, Nicholas Grosskopf, and Stokely-Van Camp, Inc. No issue is raised on this appeal as to plaintiff Gage's negligence or damages, and therefore a new trial as to such issues is unnecessary.

The questions pertaining to the signaling instruction and the form of the verdict are not reached because we are granting a new trial as a result of the failure to give the emergency instruction.

*By the Court.*—Judgment reversed and cause remanded for a new trial consistent with this opinion.

---

[5] *Id.* at page 591.

The following memorandum was filed February 1, 1968.

PER CURIAM (*on motion for rehearing*). The motion for rehearing raises the question of issues affecting the plaintiff and his burden of proof upon the new trial. We have determined that the questions of the plaintiff's contributory negligence and his damages have been resolved and need not be retried.

The plaintiff's complaint alleges causal negligence on the part of both the defendant, Sandra Seal, and the employees of the defendant, Stokely-Van Camp. Both defendants have cross-complained against each other. At the new trial the plaintiff will have the burden to prove negligence on the part of any or all of the defendants, as he chooses, and the defendants will have the burden to prove the allegations of their respective cross complaints.