Joan A. Kelly, Plaintiff-Respondent,

Wisconsin Health Fund and United Healthcare, Involuntary-Plaintiffs,

v.

Amanda E. Berg and Manitowoc Mutual Insurance Company, Defendants-Appellants,

Adam J. Finkler, Defendant.

Court of Appeals

*No. 2014AP1346. Submitted on briefs June 30, 2015.
—Decided August 18, 2015.*

2015 WI App 69

(Also reported in 870 N.W.2d 481.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Sven W. Strutz* and *Michael L. Eckert* of *Eckert – Kost, LLP*, Rhinelander.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Andrew J. Schwaba* and *Thomas P. Schwaba* of *The Schwaba Law Firm*, Marinette.

Before Stark and Hruz, JJ., and Thomas Cane, Reserve Judge.

¶ 1. STARK, J. A dog owned by Amanda Berg and Adam Finkler attacked a dog owned by their

88

neighbor, Joan Kelly. Kelly intervened and was injured in the process. Kelly sued Finkler, Berg, and Berg's homeowner's insurer, Manitowoc Mutual Insurance Company, and a jury awarded her damages for her personal injuries. Berg and Manitowoc (collectively, Berg) appeal, seeking a new trial.[1] Berg argues the circuit court erroneously exercised its discretion by instructing the jury on the emergency doctrine, and she also argues the damages awarded by the jury are excessive.

¶ 2. We agree with Berg that the circuit court erred by instructing the jury on the emergency doctrine. The emergency doctrine does not apply under the facts of this case because the time in which action was required was not short enough to preclude a deliberate and intelligent choice of action. We further conclude the circuit court's error in instructing the jury on the emergency doctrine prejudiced Berg. We therefore reverse the judgment in Kelly's favor and remand for a new trial on liability. In addition, because the special verdict was confusing with respect to Kelly's damages for past pain, suffering, and disability, we also remand for a new trial on Kelly's damages.

## BACKGROUND

¶ 3. Kelly sued Berg on December 17, 2012, asserting a claim under Wis. Stat. § 174.02.[2] That statute provides that the owner of a dog "is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property." Sec. 174.02(1)(a). However, this rule of strict

---

[1] Finkler filed for bankruptcy and was dismissed from the case during the pendency of this appeal.

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

liability is "[s]ubject to" WIS. STAT. § 895.045, the contributory negligence statute. Sec. 174.02(1)(a). Thus, aside from damages, the primary issue for the jury to determine at trial was whether Kelly was contributorily negligent.

¶ 4. At trial, Kelly testified Berg and Finkler were her next-door neighbors. Berg and Finkler owned two pit bulls, named Princess and Servaceous. Kelly owned a chocolate labrador named Moosie.

¶ 5. Kelly testified that, at about 8:40 p.m. on June 16, 2011, she was washing up in her basement after working in her yard for several hours, when she heard an "awful screeching, yelping noise[.]" She realized Moosie was making the noise and ran outside, where she saw that Princess was inside Kelly's fenced backyard and was "hanging from Moosie's throat[.]"[3] Kelly began screaming for Finkler to help her, but neither he nor Berg responded. Kelly then observed that Moosie "couldn't even yelp any more[,]" and even though he was "swinging [Princess] back and forth trying to get her to let go," Princess would not release her grip on him.

¶ 6. At that point, Kelly testified, she thought, "[I]f I don't do something right now, [Princess is] going to kill [Moosie]." She therefore ran to the dogs and pulled Princess's jaws open, allowing Moosie to run toward the back door of Kelly's house. Kelly pushed open the fence gate, hoping Princess would leave her yard, but instead Princess followed Moosie to the back

---

[3] At trial, Kelly testified Berg and Finkler's pit bulls dug under her fence "many times" in an attempt to get into her yard. She testified she informed Finkler about the holes on "many occasions," and he filled them. Kelly did not specifically testify as to how Princess got into her yard on the day of the attack.

door and "clamped . . . onto his right shoulder[.]" Kelly dug her fingernails into Princess's nose and pulled Princess's jaws apart a second time, but Princess then attacked Moosie's left shoulder.

¶ 7. Kelly pulled Princess's jaws apart a third time and was able to get Moosie into the house. However, as Moosie ran inside, Princess bit Kelly's right arm and pulled her to the ground, causing her to strike her knee on the concrete. Kelly pushed Princess's jaws as hard as she could and again grabbed her nose. Princess then let go of Kelly and ran away. Kelly testified, "If I had not intervened, [Princess] would have kill[ed] [Moosie]. There's no doubt in my mind. . . . She was not going to let go until he was dead."

¶ 8. Kelly went to the emergency room following the attack and received stitches for the bite wounds on her arm. The wounds subsequently became infected, requiring antibiotics. Although Kelly did not report any knee pain when seen in the emergency room, she saw a nurse practitioner for knee pain the following week and was subsequently referred to an orthopedic surgeon for treatment.

¶ 9. Psychologist Brad Grunert testified he performed an independent psychological examination of Kelly on August 24, 2012. He diagnosed Kelly with mild chronic posttraumatic stress disorder (PTSD). As treatment, he recommended twelve to sixteen imaginal exposure and reprocessing sessions, at a cost of $330 per session. Kelly had not yet begun those sessions at the time of trial.

¶ 10. Following the close of testimony, the circuit court announced that it intended to give the jury a modified version of the standard jury instruction on the emergency doctrine, WIS JI—CIVIL 1105A (2015). Neither party had requested such an instruction.

Berg's attorney objected, arguing the court's proposed instruction "should not apply to this fact circumstance." The court rejected counsel's argument, explaining:

> [Y]ou [a]re going to make an argument . . . that she should not have jumped in between the two dogs[.]
>
> . . . .
>
> It seems to me to be certainly reasonable for [Kelly] to argue on the other side that her property [i.e., Moosie] was seriously endangered, and she tried to do something, and she's held to a standard that would be similar to someone in an emergency.
>
> . . . .
>
> I think it's unfair to [Kelly] to expect her to respond to the issue . . . that her conduct in jumping between two arguing dogs was negligent, and she's on the verdict as being negligent. I think she's entitled to the same kind of instruction that somebody would have if someone blew a stop sign at an intersection and she had to take evasive action[.]

¶ 11. Defense counsel also objected to the special verdict form proposed by the court, which separated Kelly's damages for past pain and suffering into two categories: those related to PTSD and those unrelated to PTSD. Defense counsel requested "a single inquiry on past pain, suffering and disability." The court rejected counsel's request, stating that not separating those damages into two categories would "just caus[e] so much confusion[.]"

¶ 12. Question 1 on the special verdict form submitted to the jury asked whether Kelly was negligent during and immediately prior to the incident on June

16, 2011. The jury answered that she was not. Because it answered Question 1 in the negative, the jury did not answer Question 2, which asked whether Kelly's negligence was a cause of her injuries and damages, or Question 3, which asked the jury to apportion negligence between Kelly and Berg/Finkler.[4]

¶ 13. Question 4 on the special verdict pertaining to damages asked the jury:

> What sum of money will reasonably compensate [Kelly] for each of the following:
>
> (a) past medical and health care expenses $____
>
> (b) past pain, suffering, and disability
> not related to PTSD $____
> related to PTSD (not to exceed 16 sessions) $____
>
> (c) past wage loss[.] $____

The jury awarded Kelly $5,296.22 for past medical expenses; $150,000 for past pain, suffering, and disability not related to PTSD; $5,280 for past pain, suffering, and disability related to PTSD; and $4,056.20 for past wage loss. Next to its answer regarding past pain, suffering, and disability related to PTSD, the jury wrote, "330.00 × 16=5280.00[.]"

¶ 14. Berg filed a postverdict motion arguing she was entitled to a new trial on liability because the circuit court erroneously instructed the jury on the emergency doctrine. Berg also moved for remittitur or a new trial on damages, pursuant to WIS. STAT.

---

[4] Question 3 incorrectly asked the jury to compare Kelly's negligence to that of Berg/Finkler. The jury should have been asked to compare Kelly's negligence to the *conduct* of the dog, Princess. *See* WIS JI—CIVIL 1390 (2015).

§ 805.15(6), arguing the jury's verdict was excessive. The circuit court denied Berg's postverdict motions, and this appeal follows.

## DISCUSSION

### I. Emergency doctrine

¶ 15. Berg first argues the circuit court erred by instructing the jury on the emergency doctrine. A circuit court has broad discretion in deciding whether to give a particular jury instruction. *State v. Anderson*, 2014 WI 93, ¶ 16, 357 Wis. 2d 337, 851 N.W.2d 760. "A circuit court appropriately exercises its discretion in administering a jury instruction so long as the instruction as a whole correctly states the law and comports with the facts of the case." *Weborg v. Jenny*, 2012 WI 67, ¶ 42, 341 Wis. 2d 668, 816 N.W.2d 191. We will affirm the court's decision to give a particular instruction absent an erroneous exercise of discretion. *Anderson*, 357 Wis. 2d 337, ¶ 16. " 'However, we independently review whether a jury instruction is an accurate statement of the law applicable to the facts of a given case.' " *Id.* (quoting *State v. Fonte*, 2005 WI 77, ¶ 9, 281 Wis. 2d 654, 698 N.W.2d 594).

¶ 16. Generally, the emergency doctrine relieves a person from liability for his or her action or inaction when faced with an emergency that his or her conduct did not help to create. *See Hoeft v. Friedel*, 70 Wis. 2d 1022, 1030, 235 N.W.2d 918 (1975). The doctrine "has had its greatest development in the area of automobile accident cases[.]" *McCrossen v. Nekoosa Edwards Paper Co.*, 59 Wis. 2d 245, 259, 208 N.W.2d 148 (1973). In

94

that context, courts typically state that the doctrine applies if three elements are satisfied:

> First, the party seeking the benefits of the emergency doctrine must be free from negligence which contributed to the creation of the emergency. Second, the time element in which action is required must be short enough to preclude deliberate and intelligent choice of action. Third, the element of negligence being inquired into must concern management and control [of a vehicle] before the emergency doctrine can apply.

*Totsky v. Riteway Bus Serv., Inc.*, 2000 WI 29, ¶ 22, 233 Wis. 2d 371, 607 N.W.2d 637 (quoting *Gage v. Seal*, 36 Wis. 2d 661, 664, 154 N.W.2d 354 (1967)). However, the emergency doctrine "is by no means limited to negligence on the road." *McCrossen*, 59 Wis. 2d at 259. In *McCrossen*, for instance, our supreme court concluded an instruction on the emergency doctrine was warranted in a case where a construction worker was injured due to a build-up of toxic gas in the building where he was working. *Id.* at 248–50, 258–60.

¶ 17. The circuit court concluded the emergency doctrine applied in this case because Kelly's property, i.e., Moosie, "was seriously endangered, and she tried to do something[.]"[5] The court reasoned Kelly was "entitled to the same kind of instruction that somebody would have if someone blew a stop sign at an intersection and she had to take evasive action[.]" The court therefore instructed the jury:

> When considering the negligence of the plaintiff in this case bear in mind that a person may suddenly be confronted by an emergency, not brought about or

---

[5] It is well established that a dog constitutes personal property under Wisconsin law. *See Rabideau v. City of Racine*, 2001 WI 57, ¶ 5, 243 Wis. 2d 486, 627 N.W.2d 795.

contributed to by her own negligence. If that person, in this case the plaintiff, is compelled to act instantly to avoid injury to her property or to her person, the plaintiff is not negligent if she makes a choice of action or inaction that an ordinarily prudent person might make if placed in the same position. This is so even if it later appears that her choice was not the best or safest course.

This rule does not apply to a person whose negligence wholly or in part created the emergency. A person is not entitled to the benefit of this emergency rule unless she is without fault in the creation of the emergency.

¶ 18. Berg argues the circuit court erred by giving this instruction because the emergency doctrine cannot apply when a person acts to prevent damage to property, rather than to prevent harm to his or her own person. We need not resolve this issue because we conclude reversal is required on narrower grounds. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (Cases should be decided on the narrowest possible grounds.). That is, assuming without deciding that the emergency doctrine can apply when only damage to property is at stake, we nevertheless conclude the doctrine does not apply under the particular facts of this case.

██

¶ 19. As noted above, one of the elements of the emergency doctrine is that the time in which action is required is short enough to preclude a deliberate and intelligent choice of action. *See Totsky*, 233 Wis. 2d 371, ¶ 22. Stated differently, "[t]he application of the emergency rule rests upon the psychological fact that the time which elapses between the creation of the danger and the impact is too short under the particular

circumstances to allow an intelligent or deliberate choice of action in response to the realization of danger." *Gage*, 36 Wis. 2d at 664 (quoting *Cook v. Thomas*, 25 Wis. 2d 467, 471, 131 N.W.2d 299 (1964)). In other words, the person's reaction to the danger must be "practically instinctive or intuitive[.]" *Cook*, 25 Wis. 2d at 471.

¶ 20. For instance, in *Tombal v. Farmers Insurance Exchange*, 62 Wis. 2d 64, 67, 214 N.W.2d 291 (1974), the plaintiff's car collided with the defendant's vehicle in the intersection of University Avenue and Henry Street in Green Bay. At that intersection, vehicles traveling on Henry Street were subject to stop signs, and vehicles traveling on University Avenue had the right of way. *Id.* The plaintiff, who was traveling east on University Avenue, testified she saw the defendant's vehicle stopped at the stop sign on Henry Street when she was about two car lengths from the intersection. *Id.* When she was about one car length away, she saw the defendant's vehicle moving into the intersection. *Id.* Just before the impact, the plaintiff applied her brakes and attempted to turn to the right, but she could not avoid a collision. *Id.* The circuit court directed a verdict for the plaintiff with respect to negligence, concluding the defendant was negligent as a matter of law and the emergency doctrine excused any negligence on the plaintiff's part. *Id.* at 67–69. Our supreme court affirmed, rejecting the defendant's argument that "an inference could be drawn by the jury that [the plaintiff] had sufficient time in which to react so as to avoid the collision." *Id.* at 70–71. Instead, the court agreed with the circuit court that the plaintiff had "no more than a second or two to react after she had seen [the defendant's] vehicle in a stopped position and thereafter saw it move into the intersection[.]" *Id.*

at 71. Under these facts, the court stated the plaintiff was "without time to effectively react[.]" *Id.*

¶ 21. In contrast, in *Zimmer v. Zimmer*, 6 Wis. 2d 427, 428, 431, 95 N.W.2d 438 (1959), the supreme court concluded the emergency doctrine did not excuse Cyril Zimmer's negligence when he was confronted by a vehicle that crossed the center line and invaded Zimmer's lane of traffic. Given the evidence regarding the distances between the two cars, the court reasoned Zimmer had about seven seconds in which to act before the collision occurred. *Id.* at 430–31. In other words, he had time to make a deliberate and intelligent choice of action.

¶ 22. Similarly to the facts in *Zimmer*, in this case, Kelly indisputably had time to contemplate her course of conduct before acting. At trial, Kelly testified she was inside her house when she first heard Moosie yelping. She then ran outside and observed Princess attacking Moosie. Next, she yelled for help from her neighbor. After he failed to respond, the altercation between the dogs progressed to the point where Moosie could no longer yelp. It was only at that point that Kelly decided to intervene by attempting to pry Princess's jaws open. On this record, we conclude, as a matter of law, that Kelly had time to make a deliberate and intelligent choice whether to intervene. Consequently, the emergency doctrine does not apply. *See Totsky*, 233 Wis. 2d 371, ¶ 41 ("If, however, the time frame 'was such that the [person] did have time for considered action,' then there is no emergency as a matter of law." (quoted source omitted)).

¶ 23. Kelly argues the circuit court's instruction on the emergency doctrine was appropriate because it

was "supported by" the rescue rule.[6] However, the rescue rule is separate and distinct from the emergency doctrine. *See Cords v. Anderson*, 80 Wis. 2d 525, 545–46, 259 N.W.2d 672 (1977). Under the rescue rule, "a rescuer is not negligent where the rescue, although dangerous, is not unreasonable or unreasonably carried out." *Id.* at 548. The rule applies when:

1. ... the person to be rescued was actually in imminent danger of death or injury or it appeared to the plaintiff, in the exercise of ordinary care, that the person was in imminent danger; and

2. ... in deciding whether to attempt to make the rescue, the plaintiff acted as a reasonably prudent person even though there was no certainty of success in accomplishing the rescue; and

3. ... in carrying out the rescue attempt, the person used ordinary care with respect to the means and manner of making the rescue.

WIS JI—CIVIL 1007.5 (1992). Unlike the emergency doctrine, the rescue rule does not require that the time element be so short as to preclude a deliberate or intelligent choice of action. *Cords*, 80 Wis. 2d at 546. Rather, the rescue rule applies "even though the action of the one doing the rescue is deliberate and taken after some planning or consideration." *Id.*

¶ 24. Here, the circuit court clearly instructed the jury on the emergency doctrine, rather than the rescue rule. Because the two doctrines are separate and distinct, and require proof of different elements, the existence of the rescue rule does not "support" the court's decision to give an emergency doctrine instruc-

---

[6] Berg similarly states the circuit court may have been "attempting" to instruct the jury on the rescue rule, rather than the emergency doctrine.

tion. Although the parties address whether an instruction on the rescue rule would have been appropriate, that issue is not before us, and we do not address it.

¶ 25. Kelly next argues the emergency doctrine instruction was appropriate because, under WIS. STAT. § 939.49(1), a person is "privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with the person's property." Kelly argues her actions were "permissible under the law because she used reasonable force as necessary to protect her personal property, Moosie the dog, while under attack in her home." However, § 939.49(1) is a defense to criminal liability. It is irrelevant to the issue of whether the emergency doctrine can apply in this civil action to excuse Kelly's contributory negligence, if any, in intervening to stop Princess from attacking Moosie.

¶ 26. Finally, Kelly argues that, even if the circuit court erred in instructing the jury on the emergency doctrine, the error did not prejudice Berg. When a court has erroneously given a jury instruction, "a new trial is not warranted unless the error is determined to be prejudicial." *Lutz v. Shelby Mut. Ins. Co.*, 70 Wis. 2d 743, 750–51, 235 N.W.2d 426 (1975). An error in the jury instructions is prejudicial if it is probable, not merely possible, that the jury was misled. *Id.* at 751. "Stated another way, an error relating to the giving or refusing to give an instruction is not prejudicial if it appears that the result would not be different had the error not occurred." *Id.*

¶ 27. We conclude it is probable the jury was misled by the circuit court's erroneous instruction on the emergency doctrine. Aside from damages, the pri-

100

mary issue at trial was whether Kelly was contributo-
rily negligent when she intervened to stop Princess
from attacking Moosie. Evidence was presented from
which a reasonable juror could conclude Kelly was
contributorily negligent. However, the court specifi-
cally instructed the jury that Kelly would be relieved of
any contributory negligence if the emergency doctrine
applied. Under these circumstances, the result of the
trial likely would have been different absent the erro-
neous jury instruction.

¶ 28. Kelly contends that instructing the jury on
the emergency doctrine made no difference to the
outcome of the case because, rather than relying on the
emergency doctrine, "it is more likely the jury simply
believed [Kelly] acted reasonably throughout this
ordeal"—that is, that she was not contributorily neg-
ligent in the first place. However, there is nothing in
the record to support Kelly's contention. The special
verdict form simply asked the jury to determine
whether Kelly was negligent, to which the jury an-
swered, "No." The jury was not asked to specify
whether its answer was based on a conclusion that
Kelly was not negligent in the first place or on a
conclusion that she was negligent, but her negligence
was excused by operation of the emergency doctrine.

¶ 29. Kelly also observes that, during voir dire,
the potential jurors were asked whether they would
intervene if they observed their dog fighting with
another dog. All of the potential jurors responded that
they would intervene. Kelly contends this shows that
the jury would have found her not negligent, even
absent the emergency doctrine instruction. We dis-
agree. That each juror stated he or she would inter-
vene in a hypothetical dog fight does not mean the
same jurors would necessarily conclude Kelly's actions

101

were reasonable, after hearing all of the evidence and being properly instructed on the applicable legal principles.

¶ 30. Kelly also notes that the circuit court properly instructed the jury on contributory negligence. Citing *Weborg*, Kelly argues we should "presume that the jury weighed the contributory negligence instruction, discarded the [emergency doctrine] instruction . . ., and came to a proper conclusion that no contributory negligence occurred."

¶ 31. In *Weborg*, a medical malpractice case, our supreme court concluded the circuit court erred by modifying the standard jury instruction on expert opinion testimony to state that the jury was not bound by any expert's opinion "except with regard to the standard of care exercised by medical doctors." *Weborg*, 341 Wis. 2d 668, ¶¶ 31, 73. Nevertheless, the supreme court concluded the error was harmless because the jury was also given the standard instruction on medical negligence, which stated the jury was to determine the standard of care based on the expert testimony, and was further instructed to "weigh the different expert opinions against each other and consider the relative qualifications and credibility of the experts and the reasons and facts supporting their opinions." *Id.*, ¶¶ 31 n.7, 74. The court explained, "Absent any indication to the contrary, we presume that the jury did just that: the jury weighed the different expert opinions on standard of care against each other; accepted certain experts' opinions over others, and ultimately determined that [the defendant physicians] each used the standard of care[.]" *Id.*, ¶ 74.

¶ 32. The *Weborg* court concluded the circuit court's error in instructing the jury was not prejudicial because the instructions, when considered as a whole,

102

conveyed the correct legal standard. That is not the case here. In this case, the circuit court properly instructed the jury on contributory negligence, as a general matter. However, it then instructed the jury that Kelly could be relieved of any contributory negligence by operation of the emergency doctrine, which, as we have explained, was inapplicable under the circumstances. Unlike in *Weborg*, it is probable the jury in this case was misled by the court's erroneous instruction. *See Lutz*, 70 Wis. 2d at 751. Accordingly, we reverse the judgment in Kelly's favor and remand for a new trial on liability.

## II. Damages

¶ 33. Berg also argues she is entitled to a new trial on damages because the damages awarded by the jury are excessive. We need not address this argument because we conclude a new trial on damages is warranted on other grounds. *See Hofflander v. St. Catherine' s Hosp. Inc.*, 2003 WI 77, ¶ 102, 262 Wis. 2d 539, 664 N.W.2d 545 (when resolution of one issue is dispositive, appellate courts will ordinarily not address additional issues). Specifically, we conclude the jury was likely confused by the damages question on the special verdict.

¶ 34. A circuit court has wide discretion in framing a special verdict. *Runjo v. St. Paul Fire & Marine Ins. Co.*, 197 Wis. 2d 594, 602, 541 N.W.2d 173 (Ct. App. 1995). "We will not interfere with the form of a special verdict unless the question, taken with the applicable instruction, does not fairly present the material issues of fact to the jury for determination." *Z.E. v. State*, 163 Wis. 2d 270, 276, 471 N.W.2d 519 (Ct.

App. 1991). A misleading verdict question that may cause jury confusion is a sufficient basis for a new trial. *Runjo*, 197 Wis. 2d at 603.[7]

¶ 35. Question 4 on the special verdict asked the jury to determine what sums of money would reasonably compensate Kelly for four separate categories of damages: past medical and health care expenses; past pain, suffering, and disability not related to PTSD; past pain, suffering, and disability related to PTSD; and past wage loss. The question stated the damages for past pain, suffering, and disability related to PTSD were "not to exceed 16 sessions[.]" Additionally, the court instructed the jury:

> You have heard testimony that [Kelly] consulted psychologist, Dr. Brad Grunert, on August 24th, 2012.
>
> At that time Dr. Grunert recommended a series of 12 to 16 therapy sessions for her [PTSD]. You are instructed that as an element of past pain, suffering—pain and suffering, excuse me, you may only find pain and suffering for [PTSD] for a period of time up to the 16 sessions following Dr. Grunert's recommendation of the therapy.

¶ 36. We conclude Question 4 on the special verdict likely confused the jury for two reasons. First, the question informed the jury it could award damages for Kelly's past pain, suffering, and disability related

---

[7] In addition, our supreme court has stated:

When the appeal questions the amount of damages as not being supported by the evidence,—as here—and this court has ordered a new trial on other grounds,—as here—it has been our practice to include the issue of damages in the order for new trial. We do so here.

*Mustas v. Inland Constr., Inc.*, 19 Wis. 2d 194, 208, 120 N.W.2d 95 (1963).

to PTSD for only "16 sessions." The circuit court apparently intended to impose a temporal limitation on Kelly's claim.[8] However, the words "16 sessions," without more, do not suggest a temporal limitation. Moreover, there was no evidence in the record about the time it would take Kelly to complete the sixteen sessions Grunert recommended.

¶ 37. The manner in which the jury answered Question 4 confirms it was confused by the question's reference to "16 sessions." Question 4 asked the jury what sum would reasonably compensate Kelly for her past pain, suffering, and disability related to PTSD. The court properly instructed the jury that past pain, suffering, and disability "includes any pain, humiliation, embarrassment, worry or distress which [Kelly] has suffered in the past." *See* WIS JI—CIVIL 1766 (2009). The jury awarded Kelly precisely $5,280 for past pain, suffering, and disability related to her PTSD. Next to its answer, the jury indicated it arrived at that amount by multiplying $330, the hourly cost of a therapy session with Grunert, by sixteen. However, Question 4 did not ask the jury to award Kelly future medical expenses. The cost of Kelly's recommended future treatment for PTSD has no logical relation to the sum that will reasonably compensate her for her past pain, humiliation, embarrassment, worry, or distress. The jury's decision to award the cost of future

---

[8] On appeal, it is undisputed that, because Kelly had not yet undergone the recommended, curative treatment for her PTSD at the time of trial, her claim for pain and suffering related to PTSD was "limited in duration." However, it is not clear to this court, nor could it have been clear to the jury, to what time period the circuit court intended to limit Kelly's damages.

treatment therefore shows it was confused as to the proper measure of Kelly's damages.

¶ 38. Second, it was inappropriate and unnecessary for the special verdict to separate Kelly's damages for past pain, suffering, and disability into two sub-categories: damages related to PTSD and damages unrelated to PTSD. Neither party asked the court to phrase the question in this way; both requested a single inquiry regarding past pain, suffering, and disability. When Berg's attorney objected to separating the damages for past pain, suffering, and disability into sub-categories, the circuit court responded that failing to do so would confuse the jury. However, the court failed to articulate any reasons for that conclusion.

¶ 39. Contrary to the circuit court's statement, we conclude it was likely more confusing to the jury to separate Kelly's past pain, suffering, and disability damages into sub-categories than it would have been to present a single question on the topic. It is clear from the court's oral decision denying Berg's postverdict motion that the court itself conflated the PTSD and non-PTSD damages. In discussing the jury's $150,000 award for pain, suffering, and disability not related to PTSD, the court repeatedly referred to Kelly's PTSD symptoms. The court began by stating:

> The question is[,] is this an unreasonable amount of money, $150,000, for a[n] essentially closed period of disability, pain and suffering or not, and *part of the pain and suffering, of course, also includes ... the emotional trauma of being involved in this fight with the dog where she testified she might be killed.*

106

(Emphasis added.) The court then clarified that "these are not PTSD damages[.]" However, the court went on to state:

> But I think that *the trauma that Ms. Kelly certainly experienced when she was trying to pull her dog apart from this other animal, and when she literally was fearful for her life,* and with pit bulls involved, that's not an unreasonable fear, and then the fact that Ms. Berg and [Mr. Finkler] seemed to be obtuse to the ongoing problem that was occurring of listening to this other dog running around, not [Princess] but the companion, running around kind of *causing her to remember this all the time, which is PTSD in a sense and in not, I mean, it's kind of a jumbled mess.*

(Emphasis added.)

¶ 40. If the circuit court itself was confused as to which of Kelly's damages related to her PTSD and which did not, it is likely the jury was also confused. The manner in which the jury answered Question 4 further suggests the jury was confused about the distinction between PTSD and non-PTSD damages. The jury awarded Kelly $150,000, ostensibly for past pain, suffering, and disability not related to PTSD. It implicitly determined Kelly suffered from PTSD by awarding her the cost of sixteen therapy sessions to treat that disorder. However, aside from that amount, the jury declined to award Kelly any damages for past pain, suffering, and disability related to PTSD, which suggests the jury was confused about the nature of the damages it was being asked to award. These considerations, in combination with the confusing proviso in the special verdict that the jury could award past pain, suffering, and disability damages for only "16 sessions," leads us to conclude a new trial on Kelly's damages is warranted. *See Runjo*, 197 Wis. 2d at 603

(A misleading verdict question that may cause jury confusion is a sufficient basis for a new trial.).

*By the Court.*—Judgment reversed and cause remanded for further proceedings.