PER CURIAM.
¶1 This case is before us for a second time. On June 16, 2011, Joan Kelly and her dog were attacked and seriously injured by a pit bull owned by Amanda Berg and Adam Finkler. Kelly sued Finkler, Berg, and Berg's homeowner's insurer, Manitowoc Mutual Insurance Company, and a jury awarded Kelly compensatory damages for her personal injuries. Berg and Manitowoc (collectively, Berg) appealed, arguing the circuit court erroneously exercised its discretion by instructing the jury on the common-law emergency doctrine and that the jury's award of damages was excessive. We agreed that the emergency doctrine did not apply to the facts of the case and that the special verdict form was confusing with respect to Kelly's damages for past pain, suffering, and disability. We therefore reversed the judgment against Berg. See Kelly v. Berg , 2015 WI App 69, ¶2, 365 Wis. 2d 83, 870 N.W.2d 481 (Kelly I ).
¶2 On remand, the matter proceeded to a second trial, and a jury again awarded Kelly compensatory damages for her personal injuries. The jury also affirmatively answered two special verdict questions[1] that rendered Berg liable for two times the full amount of damages awarded by the jury, pursuant to WIS. STAT. § 174.02(1)(b) (2013-14).[2] However, based on public policy concerns, the circuit court granted Berg's motion after the verdict, and it changed the jury's answers to these two questions from "yes" to "no." Thus, the court effectively vacated the jury's award of double damages to Kelly.
¶3 Kelly now appeals, arguing the circuit court erred by determining that public policy concerns justified overturning the jury's answers to the two special verdict questions. Berg cross-appeals, arguing the court erred by allowing the two special verdict questions concerning double damages to go to the jury at all, because Kelly abandoned any claim for double damages by not seeking them at her first trial.
¶4 We conclude public policy concerns justify the denial of double damages to Kelly. We therefore affirm the judgment and order of the circuit court. Because we affirm the judgment and order of the court in Berg's favor, Berg's cross-appeal is moot.
BACKGROUND
¶5 The general background facts were set forth in our opinion in Kelly I. We recite the relevant facts here. Kelly lived next-door to Berg and Finkler. Kelly I , 365 Wis. 2d 83, ¶4. Berg and Finkler owned two pit bulls, named Princess and Servaceous. Id. Kelly owned a chocolate labrador named Moosie. Id.
¶6 At approximately 8:40 p.m. on June 16, 2011, Kelly was in her basement when she heard Moosie yelping. Id. , ¶5. Kelly ran outside, where she saw Princess inside her fenced-in backyard attacking Moosie.[3] Id. After unsuccessfully attempting to summon help, Kelly herself tried to separate Princess and Moosie. Id. Kelly eventually succeeded at separating the two dogs, but only after Princess caused her multiple injuries. Id. , ¶¶5-7.
¶7 Kelly sued Berg on December 17, 2012, asserting two claims: (1) a violation of WIS. STAT. § 174.02, including a request for double damages; and (2) common-law negligence. Before trial, the parties stipulated that Berg was strictly liable for Kelly's injuries under § 174.02(1)(a), and Kelly also abandoned her request for double damages.
¶8 The jury returned a verdict awarding Kelly $164,632.42. Berg appealed, and as mentioned above, we reversed and remanded for a new trial. See Kelly I , 365 Wis. 2d 83, ¶2. Prior to the second trial, Kelly submitted a proposed special verdict form that included two questions related to double damages.[4] Question 7 asked the jury whether Berg's dog had injured a person, domestic animal or property prior to its attack on Kelly and her dog. Question 8 asked, if the dog had caused an injury as described in question 7, whether Berg had knowledge that the dog had done so.
¶9 Berg objected to the inclusion of questions 7 and 8 on the special verdict form and filed a motion in limine seeking to limit the scope of the second trial to only those issues litigated at the first trial. The circuit court denied Berg's motion after a hearing, concluding that it was "going to try this case again as if it hadn't been tried before."
¶10 At the second trial, Kelly's testimony provided an account of the attack consistent with her testimony at the first trial, discussed above. As relevant to this appeal, Kelly also provided testimony regarding damage to her property that Princess had caused prior to the attack. Specifically, Kelly testified that in the year leading up to the attack, Princess "t[ore] up [Kelly's] sod and grass" by digging holes under her fence approximately six to eight times. Kelly stated that the holes required "a couple shovels full of dirt" to fill in.
¶11 Kelly also testified that on the day of the attack, Princess gained access to her yard by tunneling under her fence. Kelly knew of one prior occasion where Princess had entered her yard, but Kelly did not believe that Princess had tunneled under the fence on that occasion. Instead, Kelly acknowledged that Princess likely gained access to her yard through an open gate on that occasion. Kelly also acknowledged that, four days prior to the attack, she had spent a "couple hours" in Berg's backyard, while Princess was "loose," but without incident.
¶12 The second jury awarded Kelly $148,481.51 in damages. The jury also affirmatively answered questions 7 and 8, entitling Kelly to double damages under WIS. STAT. § 174.02(1)(b). However, Berg filed a motion after the verdict requesting that the circuit court change the jury's answers to questions 7 and 8 from "yes" to "no." In support, Berg argued that the jury's answers were contrary to public policy and "[t]he fact that a dog digs holes in an individual's back yard is not proof of an injury to property so as to trigger statutory double damages."
¶13 The circuit court granted Berg's motion "on public policy grounds." The court reasoned that "the tunneling, the digging, that's actual property damage ... [but] that in and of itself is not enough to implicate in my mind, even under the law as it existed at that time, double damages." Kelly now appeals, and Berg cross-appeals.
DISCUSSION
¶14 Kelly argues the circuit court erred by determining that public policy concerns justified changing the jury's answers to questions 7 and 8, which effectively vacated the jury's award of double damages. Public policy may be used to limit liability under WIS. STAT. § 174.02. Fandrey ex rel. Connell v. American Family Mut. Ins. Co. , 2004 WI 62, ¶29, 272 Wis. 2d 46, 680 N.W.2d 345. It is appropriate for a court to do so when:
(1) the injury is too remote from the negligence; (2) the recovery is wholly out of proportion to the culpability of the negligent tort-feasor; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery would place too unreasonable a burden on the negligent tort-feasor; (5) recovery would be too likely to open the way to fraudulent claims; [or] (6) recovery would enter into a field that has no sensible or just stopping point.
Erdmann ex rel. Laughlin v. Progressive N. Ins. Co. , 2011 WI App 33, ¶8, 332 Wis. 2d 147, 796 N.W.2d 846. The application of these six public policy factors to a specific set of facts to deny recovery is a question of law that we review de novo. Fandrey , 272 Wis. 2d 46, ¶29. Liability may be limited or denied solely on the basis of a single factor. Id.
¶15 The parties' arguments regarding the public policy factors rely heavily on two decisions of our supreme court in which liability for dog bite injuries was discussed at length: Fandrey and Pawlowski v. American Family Mutual Insurance Co. , 2009 WI 105, 322 Wis. 2d 21, 777 N.W.2d 67. We have previously cautioned that the application of public policy in dog bite cases must be done on a case-by-case basis because small changes in the facts often lead to differing results. Erdmann , 332 Wis. 2d 147, ¶9. Nevertheless, we agree with the parties that both Fandrey and Pawlowski are instructive in this particular case, and so we briefly summarize them.
¶16 In Fandrey , a three-year-old girl and her mother entered an unlocked home, uninvited, to deliver Christmas cookies. Fandrey , 272 Wis. 2d 46, ¶3. The homeowners, who were not at home, had left their dog in the home unattended. Id. The dog bit the three-year-old child, and the child sued the homeowners. Id. , ¶¶3-4. Our supreme court concluded that public policy considerations barred holding the homeowners liable for any damages for three reasons. Id. , ¶40.
¶17 First, the supreme court reasoned that the child's injuries were too out of proportion from the culpability of the homeowners to support any damages, because the homeowners had done nothing wrong apart from failing to lock their door. Id. , ¶34. Second, allowing recovery would place an unreasonable burden on homeowners, who should not have to keep their dog locked away at all times, especially when they expect their home to be unoccupied. Id. , ¶35. And third, extending liability to uninvited guests in a dog owner's home would enter a field with no sensible or just stopping point. Id. , ¶39.
¶18 In Pawlowski , a homeowner allowed an acquaintance of her daughter to move into her home, along with his two dogs. Pawlowski , 322 Wis. 2d 21, ¶9. One of the dogs, which had a known history of biting a young girl, was kept unleashed and eventually ran from a porch and bit a passerby. Id. , ¶¶10-11. Our supreme court determined that public policy factors did not preclude holding the homeowner liable, in part because the failure to leash a dog with a history of biting problems evinced a lack of conscious effort to prevent an attack. Id. , ¶65.
¶19 Turning to the first public policy factor in this case, we agree with Berg that the attack on Kelly was too remote from any negligence of Berg to support an award of double damages. Kelly argues that Berg's conduct was similar to the homeowner's in Pawlowski , in that Berg failed to control her dog despite "multiple attempts [by Princess] to get into [Kelly's] yard." But unlike the homeowner in Pawlowski , Berg did, in fact, attempt to control her dog by keeping Princess in a fenced-in backyard.
¶20 And although it is undisputed that Princess had a history of digging at the bottom of Kelly's fence-which, again, caused nothing more than small holes that "a couple shovels full of dirt" filled in-Kelly does not argue that digging would or should have alerted Berg that her dog was likely to tunnel under the fence and then attack Kelly. Like the homeowner in Fandrey , Berg merely failed to anticipate extraordinary circumstances, which in this case resulted in Princess escaping and committing an unprovoked attack. The attack was too remote from Berg's negligent failure to stop Princess's digging, particularly where there had been no threat of harm to Kelly during her interaction with Princess only four days prior.
¶21 For much the same reasons, the second factor-whether recovery would be wholly out of proportion to Berg's culpability-also weighs against an award of double damages. Although Princess had escaped the yard on one prior occasion, Kelly testified that the prior escape likely resulted from a gate being left open, not from any tunneling activity. Still, Kelly faults Berg for failing to take "any proactive steps to prevent her dog from damaging [Kelly's] property or from attacking [Kelly]." But again, there was no indication that the existing fence was an inadequate means of containing Princess. Just as the homeowner in Fandrey , no reasonable dog owner would feel the need to prevent injury to others by kenneling a dog left alone in their home. Similarly, here, no reasonable dog owner would feel the need to take proactive containment steps, such as leashing their dog, when left in a fenced-in yard.
¶22 Regarding the fourth public policy factor, it also counsels against an award of double damages, because such a recovery would place an unreasonable burden on all dog owners. Although Berg was aware that Princess had dug holes at Kelly's fence, there is nothing in the record that indicates that such digging put Berg on notice that Princess was likely to escape the yard. Dog owners have fences for a reason-to prevent their dogs from interacting with the public-at-large. If double damages were triggered by a dog's digging of small holes at the bottom of a fence line, without any indication that the dog had previously escaped via that digging, all dog owners would shoulder an unreasonable burden to essentially keep their dogs leashed or under "lock and key at all times," in addition to providing fencing. See Fandrey , 272 Wis. 2d 46, ¶35.
¶23 The fifth public policy factor, which precludes liability if recovery would be likely to open the door to fraudulent claims, has little or no bearing on this case. Berg makes a cursory argument that "the incentive for fraud would be high" if this fact scenario led to a recovery of double damages. However, that speculative argument does not establish the "unusual likelihood of fraud" necessary to deny a recovery under this public policy factor. See Pawlowski , 322 Wis. 2d 21, ¶73.
¶24 Finally, and most importantly, the sixth public policy factor weighs against an award of double damages here, because such an award would lead into a field with no sensible or just stopping point. We have previously decided that it would lead to an "absurd result" if any previous property damage caused by a dog, no matter how minor, exposed a dog owner to double damages under WIS. STAT. § 174.02(1)(b). See Gasper v. Parbs , 2001 WI App 259, ¶9, 249 Wis. 2d 106, 637 N.W.2d 399.
¶25 In Gasper , the property damage at issue was caused by a puppy chewing on Tupperware and chair legs. Id. , ¶6. In concluding that this type of property damage did not support an award of double damages under WIS. STAT. § 174.01(1)(b), we noted that the purpose of the double damages provision is to "punish those who harbor or keep a dog with a known propensity for unprovoked assaults and to deter others from doing the same." Id. , ¶11. Based on this purpose, we reasoned that routine property damage did not support an award of double damages because then "damages would be doubled in nearly every case in which a dog injures or causes injury. We do not believe the legislature intended this result." Id. , ¶10.
¶26 Here, we assume for purposes of our analysis that the digging done by Princess constitutes property damage within the meaning of WIS. STAT. § 174.02(1)(b). Still, we share similar concerns as the Gasper court. If a claim for double damages could be premised on a dog's digging of small holes at a fence line, then there would be no sensible or just stopping point to awarding double damages. Dogs commonly dig holes. There is nothing about a dog's act of digging small holes at the bottom of a fence that would give a reasonable dog owner notice that their dog has a propensity for unprovoked assaults.
¶27 Further, there is no negligent conduct here that would be deterred by an award of double damages. Berg placed Princess in a fenced-in backyard from which the dog had never escaped, except on one occasion through an open gate. Moreover, there is no indication in the record that Princess ever caused any prior injury to anyone. In fact, Princess had safely interacted with Kelly only days before the attack at issue here.
¶28 Kelly also argues the circuit court erred by adding a prerequisite to WIS. STAT. § 174.02(1)(b) -i.e., that the prior injury caused by a dog had to be of the same character as the act that caused the harm to trigger double damages. It does not appear to us that the court added such a prerequisite. Instead, the court properly compared the nature of the prior harm to the injuries caused to Kelly as part of its analysis of the public policy factors. In any event, as stated above, we independently review whether the application of public policy factors to a specific set of facts supports denying recovery. Here, we have done so and conclude that an award of double damages in this case is precluded by public policy considerations.[5]
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

Neither of these two questions appeared on the special verdict form presented to the jury at the first trial.

In 2015, the legislature adopted 2015 Wis. Act 112, which amended Wis. Stat. § 174.02(1)(b) (2013-14). Prior to this amendment, § 174.02(1)(b) provided, in relevant part:
[T]he owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal or property.
The parties agree that Kelly would not be entitled to double damages under the amended version of the statute, which eliminated prior property damage by a dog as a basis for double damages. However, they also agree that the legislature did not make its statutory amendment retroactive and that the 2013-14 version of the statute controls this case. Consequently, all future references to § 174.02 are to the 2013-14 version unless otherwise noted.

Kelly testified that she owned the portion of a chain-link fence that separated her yard from Berg's yard. Princess tunneled under that portion of the fence on the day of the attack in order to get inside Kelly's yard. Kelly also testified that she had allowed Berg to "hook a fence" into Kelly's fence, which resulted in Berg's entire yard being fenced-in.

These two questions were ultimately presented to the second jury on the special verdict form as questions 7 and 8. Accordingly, we will refer to them as questions 7 and 8 for the remainder of this opinion.

Because we affirm the circuit court's judgment and order on public policy grounds, we do not address the merit's of Berg's cross-appeal. See Clark v. Waupaca Cty. Bd. of Adjustment , 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994) (we need only address dispositive issues and decide the appeal on the narrowest possible ground).