PER CURIAM.
¶1 John Polchert appeals the judgment of conviction, following a jury trial, of one count of using a computer to facilitate a child sex crime. Polchert argues that the trial court erred when it denied his request for a jury instruction on the entrapment defense. We affirm.
BACKGROUND
¶2 On September 23, 2016, Polchert was charged with one count of use of a computer to facilitate a child sex crime. According to the criminal complaint, Special Agent Tamara Taubel of the Department of Justice was acting undercover when she posted an advertisement on Craigslist with the subject "when moms away time to play." Taubel identified herself as a fourteen-year old girl. Polchert responded to the advertisement. Taubel and Polchert exchanged emails and text messages that became increasingly sexually explicit. Ultimately, the two set up a meeting location to have sex. When Polchert arrived at the location he was arrested.
¶3 The matter proceeded to trial where, as relevant to this appeal, Taubel testified about the multitude of text messages and emails between herself and Polchert. The messages were also published to the jury. Taubel testified that she posted an advertisement on Craigslist with the subject "when moms away time to play-W4 male, Milwaukee." Polchert responded to the advertisement the same day and asked the author's age. Taubel, who identified herself as "Lexi," responded that she was fourteen years old.[1] Polchert told Lexi that he was twenty-six years old and asked Lexi for a picture of herself. Lexi did not respond immediately; rather, days later, Lexi emailed Polchert stating, "Sorry, took a while to respond. Ended up hanging out with [a friend] that night and got grounded when mom got home.... How are you?" The two began a long exchange, with Polchert asking Lexi what she was looking for and whether she had ever met anyone on Craigslist prior to him. Polchert again asked Lexi for a picture. Taubel sent Polchert a picture of herself as a teenager with her hand covering her face. Polchert sent Lexi a picture of his naked torso. Taubel testified that Polchert brought up the subjects of meeting and sexual contact, at which point Lexi asked Polchert if they could text each other rather than email.
¶4 Taubel testified that Polchert and Lexi then began numerous text exchanges in which Polchert confirmed that Lexi's mother would not see their texts, Polchert asked Lexi why she was not interested in boys her own age, and Polchert told Lexi not to tell anyone about their conversations because he "[was] not going to jail over something stupid." Polchert asked Lexi for a detailed description of what she looked like, asked whether she ever snuck out of the house, and asked, "What have you done with a guy?" Lexi responded that she had not gone "all the way" but that she was fourteen years old and not a "bby."[2] Lexi said that she had "done hands and mouth stuff." Polchert asked whether he could call her later that night. When Lexi did not respond, Polchert texted again the following morning with two question marks. Taubel read the series of text messages that Lexi and Polchert exchanged that day:[3]
[Lexi]: Sry! hard to tlk when mom home. We live in an apt.
....
[Polchert]: Nice wish you were with me[.]
[Lexi]: I wish I was 2 ...
[Polchert]: We could cuddle mess around a little and watch a movie
[Lexi]: Id like that ...
....
[Polchert]: What type of guys do you like
....
[Polchert]: ... do you think we can make this work.
[Lexi]: Ya. I mean if you wana. Then ya ...
[Polchert]: Ya just the age thing it feels like I'm doing something wrong if that makes sense I don't want to take advantage of you. I do like you
[Lexi]: I like you 2 ...
¶5 Polchert and Lexi continued to exchange messages. Polchert asked Lexi multiple questions about where she lived, what her schedule was like, and when they could meet. Polchert also began sending more sexually explicit messages, in which he described in detail what he wanted to do with Lexi and what he wanted Lexi to do to him. Lexi told Polchert that she did not have a lot of experience and hoped he would not make fun of her. Lexi then said that she was going to her grandmother's house and ended the conversation for that day. Lexi messaged Polchert the following day, telling Polchert that she could not comply with his request to send him more pictures because she was with her mother. Polchert then sent a series of text messages to which Lexi did not respond. Polchert then sent an emoji of a broken heart.
¶6 The following day Lexi messaged Polchert, apologizing for her delayed response and telling Polchert that she had to clean her room. The following text exchange took place:
[Lexi]: I wish u were off wrk, I wasn't at school, and we were 2getherr 2 ...
[Polchert]: Hopefully soon we will see each other what are u wearing today?
....
[Polchert]: Look I could get in a lot of trouble for this and it doesn't feel right I feel I shouldn't be talking to you! Your way to young. I think your an awesome person but I don't see this going any were honestly.
[Lexi]: Oh, k. Sry
¶7 Polchert continued the conversation, asking Lexi why she was sorry and telling her he wished she was older. Polchert also wrote that he wished he could "have one night just" with her. The following exchange occurred:
[Lexi]: Sry for botherin u. I wish that 2
[Polchert]: Your not bothering me I want you I really do I want to kiss and make love to you but I just don't see it happening.
[Lexi]: K ... I understand
[Polchert]: Do you like me. Or I'm probably just a fling
When Lexi told him that she liked him, he returned to the topic of meeting in person, suggesting that he could sneak in through Lexi's window that night. Lexi responded:
Y do u wanna meet me? I mean u just were basically breakin up with me sayin this is not going newhere
....
[Polchert]: Let's meet tonight?
....
[Polchert]: I want you.
[Lexi]: I want u 2.... Tomorrow? Mom not at wrk 2day .... Tomorrow she works and not home til like 6
[Polchert]: Nice lets do it ....
(Some formatting altered.)
¶8 The next day, Lexi texted Polchert, "Mornin." When Lexi asked Polchert how he was, Polchert replied, "Good I want you so bad to feel you." The two then discussed when they could meet at Lexi's apartment that day. Polchert asked Lexi if her neighbors would "say anything." Polchert told Lexi that she should skip her last class so that she could be home to meet him and Lexi gave Polchert her address. When Lexi asked Polchert if he could bring a condom, Polchert agreed to do so. Polchert and Lexi then had multiple phone conversations in which Polchert confirmed that Lexi was fourteen years old, discussed meeting at 4:30 p.m. that day, and warned Lexi that sometimes women bleed from having sex.
¶9 At about 4:30 p.m. that day, Polchert called Lexi and told him that he was near her apartment. Lexi directed Polchert to the parking lot of an apartment building on West National Avenue in West Allis. When Polchert arrived, he was arrested.
¶10 Taubel also testified about the process of going undercover as a minor when investigating internet crimes against children. She stated that she "look[s] to check people's intent. If you throw up an ad or you start talking to somebody, you want to get your age out pretty early in the conversation. You get your age out numerous times throughout that conversation, whether it be blatantly saying I'm whatever age, or different things like 'I can't drive, I'm grounded,' 'high school,' things like that, that really reaffirms how old you are." She also stated "when it comes to the sex talk, we let somebody start that. Once they start that, we engage a little bit back and forth just because a normal kid now a days does. And we just see what direction they go." In this particular case, Taubel stated that she repeatedly referenced Lexi's school and homework in an effort to emphasize to Polchert that Lexi was underage. She also testified that when Polchert said that the relationship with Lexi was not "going anywhere," she did not press the conversation and did not plan to reinitiate the conversation. Taubel testified that she gave Polchert multiple "out[s]," but that he kept reinitiating conversation.
¶11 At the close of evidence, Polchert asked the trial court to instruct the jury on the entrapment defense. The State objected, telling the court that Polchert has not met the burden to warrant the instruction. Specifically, the State stated: "In this situation there's been evidence that the defendant was the first one to bring up sexual intercourse. He was the first one to bring up to meet. And he was given many opportunities to not go through with this interaction, and every time he persisted. So the State doesn't feel that the defense has met their burden to even receive the instruction." The trial court agreed with the State and did not issue the entrapment defense instruction.
¶12 The jury found Polchert guilty as charged. Polchert was sentenced to five years of initial confinement and three years of extended supervision. This appeal follows.
DISCUSSION
¶13 At issue in this appeal is whether the trial court erred in failing to instruct the jury on the entrapment defense. WISCONSIN JI-CRIMINAL 780 provides, " 'Entrapment' is a defense available to defendants when a law enforcement officer has used improper methods to induce them to commit an offense they were not otherwise disposed to commit." A jury must consider whether "police induced the defendant to commit the crime." Id. "The burden is on the defendant to prove by ... a reasonable certainty by the greater weight of the credible evidence that there was inducement." Id.
¶14 "A [trial] court has broad discretion in deciding whether to give a particular jury instruction." Kelly v. Berg , 2015 WI App 69, ¶15, 365 Wis. 2d 83, 870 N.W.2d 481. If the instructions given adequately cover the law, a trial court does not erroneously exercise that discretion when it refuses to give a requested instruction, even if the proposed instruction is substantively correct. Frayer v. Lovell , 190 Wis. 2d 794, 805, 529 N.W.2d 236 (Ct. App. 1995). The court must "instruct the jury with due regard to the facts of the case, and thus '[i]t is error for the trial court to refuse to instruct on an issue which is raised by the evidence.' " Strait v. Crary , 173 Wis. 2d 377, 382, 496 N.W.2d 634 (Ct. App. 1992) (citation omitted). In all events, we will not reverse unless the failure to give the proper instruction had a prejudicial effect. See Bennett v. Larsen Co. , 118 Wis. 2d 681, 697, 348 N.W.2d 540 (1984).
¶15 Polchert argues that the trial court erred in refusing to issue the entrapment defense jury instruction. Polchert contends that on the day of his arrest, Taubel, posing as Lexi, suggested that the two should physically meet. Polchert also argues that "Taubel admitted in her testimony that she indeed was the first one to bring up the actual topic of them kissing, touching his penis and him touching her vagina." We conclude that the trial court did not erroneously exercise its discretion in refusing to issue Polchert's requested instruction.
¶16 Here, the trial court ruled that there was insufficient evidence to support submitting an entrapment instruction to the jury. We agree. Entrapment is defined as "the inducement of one to commit a crime not contemplated by him for the mere purpose of instituting criminal prosecution against him." State v. Hochman , 2 Wis. 2d 410, 413, 86 N.W.2d 446 (1957). The essence of an entrapment defense is that the " 'evil intent' and the 'criminal design' of the offense originate in the mind of the government agent, and the defendant would not have committed an offense of that character except for the urging of the agent." State v. Schuman , 226 Wis. 2d 398, 403, 595 N.W.2d 86 (Ct. App. 1999).
¶17 Thus, in order to be entitled to the entrapment instruction, Polchert must satisfy the burden of proof by a preponderance of the evidence that he was induced to commit the offenses by a government agent. See State v. Pence , 150 Wis. 2d 759, 765, 442 N.W.2d 540 (Ct. App. 1989) ; State v. Saternus , 127 Wis. 2d 460, 471-72, 381 N.W.2d 290 (1986).
¶18 The evidence in the record contains Taubel's testimony, as well as a Craigslist advertisement, emails, and text messages between Polchert and Lexi which were published to the jury. The evidence establishes that Polchert responded to Lexi's Craigslist advertisement-the advertisement did not target Polchert in any way. Polchert began the conversation with Lexi-Taubel did not initiate the conversation. Polchert asked for pictures, he asked about Lexi's age, and he asked about her sexual experience. Polchert became increasingly explicit, initially telling Lexi he wanted to "cuddle" and "mess around a little," but later asking her about masturbation and telling her he wanted to "kiss her neck," "rub her pu##y," and "put [her] hand on [his] hard co#k." Lexi's responses, on the other hand, were vague and childish. Taubel testified that she responded to Polchert's messages in a manner meant to remind him of Lexi's age. Polchert's messages reflected that he clearly knew Lexi was a child. He asked her about school, whether her mother was home, expressed concern about their age difference, and even told her that "women sometimes bleed" when they have sex.
¶19 Taubel testified that she gave Polchert multiple opportunities to cease communication. When Polchert expressed concern about the legality of their interactions, Lexi responded that she understood and was sorry for bothering him. However, Polchert pressed on multiple times without Lexi's inducement. Taubel testified that had Polchert ceased communication at those points, she would not have maintained communication.
¶20 We agree with the State that Polchert's arguments "isolate the evidence against him." Although Taubel, acting as Lexi, suggested meeting on the day of Polchert's arrest, Polchert had brought up the possibility of meeting multiple times prior to actually setting the date and time with Lexi. Polchert's argument that Taubel initiated the explicit conversation on the day of his arrest , ignores the fact that he initiated explicit conversations the week prior to his arrest . Polchert's argument also ignores Lexi's multiple reminders to Polchert-in multiple ways-about her age. Polchert fails to explain how any of Taubel's actions induced him to use a computer to solicit a teenager for sexual contact.
¶21 For the foregoing reasons, we affirm.
By the Court . Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)(5) (2017-18).

Hereinafter, we do not use quotation marks when referencing Lexi. When discussing the emails and text messages, we refer to the author of the messages as Lexi. When discussing testimony about the messages, we use Taubel's name.

The spelling and grammar in the messages are reproduced as they are written.

Many of the text messages between Polchert and Lexi contain "emojis," which are images that can be used in text messages. Many times in the opinion the use of ellipses when describing the text exchanges represent the use of emojis. Among the various emojis used in the text exchanges are hearts, smiley faces, and kisses.